2005-NMSC-032

120 P.3d 820

**ALBUQUERQUE RAPE CRISIS CENTER, Shayla Myers, and Rose Sanchez, Petitioners,**

v.

**Hon. James F. BLACKMER, Second Judicial District Court Judge, Respondent,**

and

**State of New Mexico and Marco Antonio Brizuela, Real Parties in Interest.**

No. 29,133.

Supreme Court of New Mexico.

Aug. 18, 2005.

Dixon, Scholl & Bailey, P.A., Arthur Brent Bailey, Albuquerque, NM, for Petitioners.

Patricia A. Madrid, Attorney General, David K. Thompson, Assistant Attorney General, Santa Fe, NM, for Respondent.

Kari Brandenburg, District Attorney, Niki Tapia–Brito, Assistant District Attorney, Ralph Odenwald, District Public Defender, Sophie Cooper, Assistant Public Defender, Albuquerque, NM, for Real Parties In Interest.

## OPINION

CHÁVEZ, Justice.

{1} In this case, we give effect to the Victim Counselor Confidentiality Act (Confidentiality Act), NMSA 1978, Sections 31–25–1 to –6 (1987), a statute which we construe to be consistent with this Court's psychotherapist-patient privilege, Rule 11–504 NMRA 2005. Both our psychotherapist-patient privilege and the legislatively enacted privilege at NMSA 1978, Section 31–25–3 (1987), protect confidential communications made during the course of treatment for an emotional or psychological condition from disclosure during court proceedings. Because the record in this case does not reflect whether the communications at issue were disclosed in the course of the counselor's treatment of the alleged victim for any emotional or psychological condition resulting from a sexual assault, we reverse the district court and remand this matter for proceedings consistent with this opinion.

## Procedural History

{2} This case arises from a discovery dispute in a criminal prosecution of Brizuela ("Defendant"), a defendant accused of criminal sexual penetration. The alleged victim had presented herself to the Albuquerque Rape Crisis Center (ARCC) several hours after allegedly being raped by Defendant. Defendant filed a motion to compel the ARCC counselors "to participate in pretrial interviews with defense counsel and to provide statements concerning their contact with the alleged victim." The counselors entered a special appearance so they could respond to the motion to compel, asserting that the communications they had with the alleged victim were confidential and protected by the Confi-

dentiality Act. After hearing argument of counsel, the district court entered an order granting Defendant's motion, reasoning that because a victim-counselor privilege is not recognized in the Supreme Court Rules of Evidence, the statements were not protected.

{3} ARCC filed a motion asking the court to reconsider its order contending that Article II, Section 24 of the New Mexico Constitution creates a constitutional privilege by affording certain crime victims "the right to be treated with fairness and respect for the victim's dignity and privacy throughout the criminal justice process." The district court reaffirmed its previous order in a comprehensive and thoughtfully worded order acknowledging its strong agreement with the victim's right to privacy and urging this Court to adopt a victim-counselor privilege. The district court ordered the two counselors to give statements concerning their contact with the alleged victim and to reveal any assertions, in whatever form, the alleged victim may have made to the counselors regarding: the events of the alleged criminal sexual penetration; relevant events six months before and after the date of the alleged criminal sexual penetration; the alleged victim's relationship with Defendant before, during and after the alleged criminal sexual penetration; and any statements the alleged victim may have made regarding her bias, prejudice or anger toward Defendant.

{4} ARCC filed a Petition for Emergency Writ of Prohibition or Alternatively for Writ of Superintending Control and Request for Stay of Order. On March 18, 2005, this Court entered an order staying the district court order, pending further order of this Court, and set the matter for oral argument.

## The Victim Counselor Confidentiality Act Is Given Effect Because It Is Consistent with the Supreme Court Psychotherapist–Patient Privilege

{5} At the heart of the controversy is the authority of the Legislature to enact legislation that regulates practice and procedure in the courts. Defendant cites *Ammerman v. Hubbard Broadcasting, Inc.,* 89 N.M. 307, 551 P.2d 1354 (1976), for the legal proposition that the power to prescribe rules of

evidence and procedure is vested exclusively in the Supreme Court and that the Legislature generally lacks power to prescribe judicial rules by statute. While this Court has ultimate rule-making authority, the analysis in *Ammerman* and subsequent cases which interpret legislative enactments concerning practice and procedure do not support the broad statement that our rule-making authority is exclusive. *See* Michael B. Browde & M.E. Occhialino, *Separation of Powers and the Judicial Rule–Making Power in New Mexico: The Need for Prudential Constraints*, 15 N.M. L.Rev. 407, 437 (1985) ("A careful reading of the cases and subsequent decisions applying them suggests, however, that the supreme court intended not to exclude the legislature from the rule-making process but only intended to assure judicial supremacy in any clash between legislative and judicial rules of procedure."). Instead, we have exercised our superintending control under Article VI, Section 3, to revoke or amend a statutory provision when the statutory provision conflicts with an existing court rule, *see Southwest Community Health Services v. Smith*, 107 N.M. 196, 198, 755 P.2d 40, 42 (1988) ("[w]hile, historically, the judiciary has shared procedural rule-making with the legislature, any conflict between court rules and statutes that relate to procedure are today resolved by this Court in favor of the rules"), or constitutional provision, *see State ex rel. Anaya v. McBride*, 88 N.M. 244, 247, 539 P.2d 1006, 1009 (1975) ("any legislative measure which affects pleading, practice or procedure in relation to a power expressly vested by the Constitution in the judiciary, such as quo warranto, cannot be deemed binding"), or if the provision impairs the essential functions of the Court. *See State ex rel. Bliss v. Greenwood*, 63 N.M. 156, 162, 315 P.2d 223, 227 (1957) ("The statutory regulation must preserve to the court sufficient power to protect itself from indignities and to enable it effectively to administer its judicial functions.").

{6} The facts and analysis of *Ammerman* illustrate that its holding was in fact narrow. In that case, the plaintiffs sued the defendants for alleged slanderous radio broadcasts, news reports and newscasts. *Id.* at 308, 551 P.2d at 1355. The defendants appealed an order of the district court requiring them to disclose their confidential informants, arguing that the information was privileged under the provisions of NMSA 1953, Section 20–1–12.1 (Supp.1975) (now codified at NMSA 1978, § 38–6–7 (1973)). *Id.* After concluding that the legislation at issue created a procedural evidentiary privilege, this Court focused on whether the Legislature had authority to enact such a procedural rule. We began our analysis in *Ammerman* by revisiting one of our earliest opinions on the subject, *State v. Roy*, 40 N.M. 397, 60 P.2d 646 (1936):

> It is true that this court in [*Roy* ] declined to hold that its power and right to promulgate rules of pleading, practice and procedure is an exclusive one over which the Legislature has no control. It was observed that at the time there was no conflict between any rule promulgated by the court and any law enacted by the Legislature, and that when such a conflict arose it would then be time to decide which is paramount in the rule-making field, the court or the Legislature.

*Ammerman*, 89 N.M. at 311, 551 P.2d at 1358.

{7} We next looked to the discussion in *McBride* regarding this Court's exclusive power to enact procedural rules. In *McBride*, we held that statutes purporting to regulate practice and procedure are not binding because the courts have the exclusive constitutional power to regulate practice and procedure:

> Under the Constitution, the legislature lacks the power to prescribe by statute rules of practice and procedure, although it has in the past attempted to do so. Certainly statutes purporting to regulate practice and procedure in the courts cannot be made binding, for the constitutional power is vested exclusively in this court.

*Ammerman*, 89 N.M. at 311, 551 P.2d at 1358 (quoting *McBride*, 88 N.M. at 246, 539 P.2d at 1008). As in *McBride*, we were once again confronted in *Ammerman* with a conflict between a statute and a rule of the New Mexico Supreme Court. In *Ammerman*, the conflict was between Section 20–1–12.1 (con-

fidential source privilege) and Rule 11–501 NMRA 2005, which provides:

> Except as otherwise required by constitution, and except as provided in these rules or in other rules adopted by the Supreme Court, no person has a privilege to:
>
> A. refuse to be a witness; or
>
> B. refuse to disclose any matter; or
>
> C. refuse to produce any object or writing; or
>
> D. prevent another from being a witness or disclosing any matter or producing any object or writing.

The conflict existed because this Court had not adopted a confidential source privilege.[1] Because Rule 11–501 only recognized constitutional privileges or privileges adopted by court rule, we concluded that the statutory confidential source privilege should not be given effect. *Ammerman,* 89 N.M. at 312, 551 P.2d at 1359.

{8} Following *Ammerman,* we continued to adhere to the general principle embodied in Rule 11–501 that a privilege must be required or recognized by a court rule or the New Mexico Constitution. *See State ex. Rel. Attorney General v. First Judicial District Court,* 96 N.M. 254, 629 P.2d 330 (1981). In *First Judicial District,* we rejected the "public interest" privilege asserted by the Attorney General after concluding that the privilege was neither expressly or implicitly recognized by our Constitution nor adopted by court rule, as required by Rule 11–501. 96 N.M. at 259–260, 629 P.2d at 335–36. Unlike in *Ammerman,* we were not required to analyze the Legislature's authority to enact a procedural rule because there was no statutory privilege at issue. Rather, we simply applied the framework provided in Rule 11–501 to determine whether such a privilege already existed. *Id.* at 259–260, 629 P.2d at 335–336.

{9} Neither *Ammerman* nor *First Judicial District* categorically prohibited the Legislature from enacting legislation affecting practice or procedure.[2] *See Ammerman,* 89 N.M. at 312, 551 P.2d at 1359. In fact, as *First Judicial District* recognized, some of our rules acknowledge that the Legislature may enact statutes granting a privilege. *See First Judicial District,* 96 N.M. at 259, 629 P.2d at 335 (discussing Rule 11–502 NMRA of the Rules of Evidence entitled "Required reports privileged by statute"). The same is true of other rules adopted by this Court regarding practice and procedure. *See* Rule 11–402 NMRA 2005 ("All relevant evidence is admissible, except as otherwise provided by constitution, *by statute,* by these rules . . . .") (emphasis added); Rule 5–102 NMRA 2005 ("Local rules and forms shall not conflict with, duplicate or paraphrase statewide rules *or statutes.*") (emphasis added).

{10} In *Ammerman,* we did not discuss what the result would have been had there been a court rule recognizing or requiring a confidential source privilege. Would the legislatively enacted confidential source privilege have been void altogether, or would it have been appropriate to first determine whether the legislatively enacted privilege conflicted with the purpose of this Court's rule recognizing a confidential source privilege? *State v. Herrera,* 92 N.M. 7, 582 P.2d 384 (Ct.App.1978), provides a useful analysis in answering this question. In *Herrera,* the defendant appealed, among other things, his conviction of criminal sexual penetration, arguing in relevant part that the statutory limitation on discovery and cross-examination concerning the victim's past sexual conduct was unconstitutional because the Legislature did not have authority to regulate practice and procedure. *Id.* at 10, 582 P.2d at 387. The Court of Appeals, relying on *Ammerman,* concluded that the legislation at issue did in fact regulate procedural matters within the control of the Supreme Court. *Id.* at 12, 582 P.2d at 389. However, the Court of Appeals noted this conclusion did not end the inquiry:

> we explained that rules of privilege are to be considered rules of evidence, and rules of evidence are procedural. 89 N.M. at 309–310, 551 P.2d at 1356–1357.

---

1. In 1982, the New Mexico Supreme Court adopted Rule 11–514 NMRA, the "News media-confidential source or information privilege."

2. Although here we refer broadly to legislation affecting practice or procedure, in *Ammerman*

The fact that the Legislature has attempted to regulate practice and procedure in regard to the victim's past sexual conduct does not mean that the legislation is unconstitutional in that it violates the provisions for separation of governmental power. *See* N.M. Const., Art. III, § 1. *Alexander v. Delgado*, 84 N.M. 717, 507 P.2d 778 (1973) states: "This court has no quarrel with the statutory arrangements which seem reasonable and workable and has not seen fit to change it by rule." While a statute regulating practice and procedure is not binding on the Supreme Court, it nevertheless is given effect until there is a conflict between the statute and a rule adopted by the Supreme Court. *See Ammerman v. Hubbard Broadcasting, Inc.*, [89 N.M. 307, 551 P.2d 1354]; *State ex rel. Anaya v. McBride* [88 N.M. 244, 539 P.2d 1006].

*Id.*

■ {11} Reading *Ammerman, Herrera* and *First Judicial District* together provides the framework for analyzing when we might give effect to legislation affecting practice and procedure, and specifically in this case to an evidentiary privilege. First, if a privilege is not recognized or required by the New Mexico Constitution or court rule, then the Legislature may not enact such a privilege because to do so would conflict with Rule 11–501. Second, if a privilege is recognized or required by the Constitution or court rule, and the Legislature enacts a privilege affecting arguably the same subject matter, we analyze the statutory privilege to determine whether it is consistent with the purpose of the constitutional or court rule privilege. If the statutory privilege is consistent, both are given effect because the court rule recognizing a privilege is more specific than Rule 11–501 and the court rule is expanded only within the boundaries of its purpose. If the statutory privilege is not consistent, the statutory privilege is not given effect and the constitutional or court rule privilege prevails.[3]

{12} The legislation at issue in *Herrera* is illustrative of this approach. NMSA 1953, Section 40A–9–26 (2d Repl.Vol.6, Supp.1975), enacted in 1975, permitted evidence of the victim's past sexual conduct only to the extent the court found that such evidence was material to the case and its prejudicial nature did not outweigh its probative value. The Court in *Herrera* noted that Rule 11–403 NMRA, adopted by the Supreme Court in 1973, provided that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." *Herrera*, 92 N.M. at 12, 582 P.2d at 389 (quoting Rule 11–403). Analyzing the two provisions, the court rightfully concluded that the balancing approach for admitting evidence concerning past sexual conduct under Section 40A–9–26 did not conflict with, but rather was consistent with, Rule 11–403. *Id.* Accordingly, Section 40A–9–26 was given effect.

■ {13} The question in this case is whether the Confidentiality Act conflicts with, or rather is consistent with, rules promulgated by this Court. We conclude that the Confidentiality Act is consistent with the psychotherapist-patient privilege in Rule 11–504 and it is to be given effect. The purpose of the psychotherapist-patient privilege is to protect confidential communications made during treatment of a patient's mental or emotional condition from disclosure during court proceedings. Rule 11–504(B) provides:

> General Rule of Privilege. *A patient has a privilege to refuse to disclose* and to prevent any other person from disclosing *confidential communications, made for the purposes of diagnosis or treatment of the patient's physical, mental or emotional condition,* including drug addiction, among the patient, the patient's physician or psychotherapist, or persons who are participating in the diagnosis or treatment under the direction of the physician or psycho-

---

**3.** We believe the Legislature recognizes this coordinate approach to rule-making, while acknowledging the ultimate authority of the judicial branch to determine whether to give effect to a statutory privilege. Here, for instance, the Legislature provided that "[t]he supreme court may adopt rules of procedure and evidence to govern and implement the provisions of the Victim Counselor Confidentiality Act." NMSA 1978, § 31–25–6 (1987).

therapist, including members of the patient's family.

(Emphasis added.)

{14} A review of the Confidentiality Act reveals a similar purpose of protecting confidential communications made during the treatment of an emotional condition from disclosure. NMSA 1978, Section 31–25–3(A) (1987) provides:

A victim, *a victim counselor* without the consent of the victim or a minor or incapacitated victim without the consent of a custodial guardian or a guardian ad litem appointed upon application of either party *shall not be compelled to provide testimony or to produce records concerning confidential communications* for any purpose in any criminal action or other judicial, legislative or administrative proceeding.

(Emphasis added.) A "confidential communication" is defined in NMSA 1978, Section 31–25–2(A) (1987), as a communication "disclosed in the course of the counselor's treatment of the victim for any emotional or psychological condition resulting from a sexual assault or family violence." The parallels between the purposes for the judicial and statutory privileges is clear.

{15} The judicial psychotherapist-patient privilege and the statutory victim-counselor privilege are also justified by similar private and public concerns. *See Jaffee v. Redmond,* 518 U.S. 1, 10–12, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996). The psychotherapist-patient privilege serves private interests by protecting confidential communications between a psychotherapist and her patient from involuntary disclosure, and serves the public interest by facilitating the administration of appropriate treatment for individuals suffering the effects of a mental or emotional problem and individuals suffering as a result of sexual assault or abuse. *Id.* at 11, 116 S.Ct. 1923. Like the husband-wife privilege, Rule 11–505 NMRA 2005, and the attorney-client privilege, Rule 11–503 NMRA 2005, the psychotherapist-patient privilege is "rooted in the imperative need for confidence and trust." *Id.* at 10, 116 S.Ct. 1923 (quoting *Trammel v. United States,* 445 U.S. 40, 51, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980)). Effective psychotherapy depends upon the existence of uninhibited communications. *Id.* The patient or individual must be "willing to make a frank and complete disclosure of facts, emotions, memories, and fears." *Id.* Thus, when the psychotherapist-patient privilege was first recognized by the United States Supreme Court in *Jaffee,* the Court noted the Judicial Conference Advisory Committee's following observations:

[A] psychiatrist's ability to help her patients "is completely dependent upon [the patients'] willingness and ability to talk freely. This makes it difficult if not impossible for [a psychiatrist] to function without being able to assure … patients of confidentiality and, indeed, privileged communication. Where there may be exceptions to this general rule …, there is wide agreement that confidentiality is a *sine qua non* for successful psychiatric treatment."

*Id.* (quoting Advisory Committee's Notes to Proposed Rules, 56 F.R.D. 183, 242 (1972) (internal authority omitted)).

{16} New Mexico courts have recognized the private and public importance of a psychotherapist-patient privilege and acknowledged the rationale set forth in *Jaffee. See Lara v. City of Albuquerque,* 1999–NMCA–012, ¶ 12, 126 N.M. 455, 971 P.2d 846 (acknowledging the public and private interests furthered by the psychotherapist-patient privilege); *Reaves v. Bergsrud,* 1999–NMCA–075, ¶ 22, 127 N.M. 446, 982 P.2d 497 ("keeping [Defendant's] communications with his psychotherapist confidential not only furthers the privilege's policy of patient autonomy and privacy but Defendant's own privacy interests"); *In re Doe,* 98 N.M. 442, 447, 649 P.2d 510, 515 (Ct.App.1982), *overruled on other grounds by State v. Roper,* 1996–NMCA–073, ¶ 12, 122 N.M. 126, 921 P.2d 322. The New Mexico Court of Appeals has commented on the "fear of betrayal" that exists when an individual is contemplating whether to consult a psychotherapist. *In re Doe,* 98 N.M. at 447, 649 P.2d at 515. In addition, the sensitive nature of the problems for which individuals consult psychotherapists can lead to stigma if disclosed. *Jaffee,* 518 U.S. at 10, 116 S.Ct. 1923. Without the psychotherapist-patient privilege, many indi-

viduals would likely be reluctant to seek treatment.

{17} The rationales underlying the statutory victim-counselor privilege echo those underlying the psychotherapist-patient privilege. Rape crisis centers provide specialized services within the realm of psychotherapy. As stated by the Legislature in the Confidentiality Act, these centers have "as one of [their] primary purposes the treatment of victims for any emotional or psychological condition resulting from a sexual assault or family violence." NMSA 1978, § 31–25–2(D) (1987). The ARCC serves as a unique and essential place of refuge for a rape victim. In order to preserve ARCC's existence as a place of refuge, confidential communications during the treatment of emotional conditions are as important as confidential communications made to licensed psychologists or their staff. It would make little sense for victims of rape to be deprived of the privilege because they seek help from victim counselors at a rape crisis center, while victims with the resources to seek help from a licensed psychologist would benefit from the privilege. The goals of protecting and treating survivors of sexual assault and abuse depend upon rape crisis center counselors being able to provide adequate and reliable assurances regarding confidentiality. In order to ensure their private interests are served, victims of alleged sexual assault and abuse must have complete confidence that their intensely personal communications will not be revealed. It is unlikely that they will continue to turn to ARCC if they are not assured that their disclosures will remain confidential. Confidential support services also significantly advance the public interest by encouraging survivors to report crimes and aid police in preventing future crimes. In large part because of the similarities between these rationales and those that justify the psychotherapist-patient privilege, we conclude that the Confidentiality Act is consistent with our psychotherapist-patient privilege.

{18} We are mindful that adopting evidentiary privileges may increase the risk of interfering with the truth-seeking process of litigation. After noting "the ancient proposition of law" that "the public ... has a right to every man's evidence, except for those persons protected by a constitutional, common-law, or statutory privilege" (citing to *Branzburg v. Hayes*, 408 U.S. 665, 688, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972) (quoted authority omitted) ), Chief Justice Burger stated for a unanimous court in *United States v. Nixon*, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974):

> The privileges referred to by the Court are designed to protect weighty and legitimate competing interests. Thus, the Fifth Amendment to the Constitution provides that no man 'shall be compelled in any criminal case to be a witness against himself.' And, generally, an attorney or a priest may not be required to disclose what has been revealed in professional confidence. These and other interests are recognized in law by privileges against forced disclosure, established in the Constitution, by statute, or at common law. Whatever their origins, these exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth.

*Nixon*, 418 U.S. at 709–10, 94 S.Ct. 3090.

{19} We must always be vigilant in our concern for the constitutional rights of all litigants. The constitutional protections which may be impacted by exclusionary rules of evidence include the right of an accused to be confronted with witnesses against him and to have compulsory process for obtaining witnesses in his favor, U.S. Const. amend. VI; N.M. Const. art. 2, Section 14; and the guarantee that no person shall be deprived of liberty without due process of law, U.S. Const. amends. V, XIV; N.M. Const. art. 2, Section 18. These important constitutional provisions serve as some of the reasons we have established an elaborate committee process for recommending rules changes to this Court. We believe the extent of the privilege discussed in this opinion was not lightly created nor expansively construed. Nevertheless, we refer this matter to our Rules of Evidence Committee for review and recommendation to assure comprehensive discussion and public input regarding the breadth

of the victim-counselor privilege in this opinion.

{20} Finally, we hold that applying the Confidentiality Act to this case does not conflict with Article IV, Section 34 of our state constitution, which provides "[n]o act of the legislature shall affect the right or remedy of either party, or change the rules of evidence or procedure, in any pending case." While a plain reading of this provision prohibits the retroactive application of procedural or evidentiary statutes, by court order in 1942 we applied Article IV, Section 34 to court rules as well. *See Marquez v. Wylie*, 78 N.M. 544, 546, 434 P.2d 69, 71 (1967) (quoting the order, which stated "[i]t is the sense of the court and accordingly hereby ordered that article IV, § 34, of the New Mexico Constitution shall govern in determining the effective date of the operation of all rules adopted by this court *as though the said rules had been enacted by the legislature*") (emphasis in original). The Confidentiality Act became effective in 1987. Because we are construing a statute that pre-existed the filing of the case at bar, this is not a case in which the rules of the game were changed without the parties being notified. *See Smith*, 107 N.M. at 201, 755 P.2d at 45 (holding that because NMSA 1978, Section 41–9–5 (Repl.Pamp.1986), pre-existed the litigation in that case, the confidentiality provisions of the statute did not violate Article IV, Section 34).

## CONCLUSION

{21} The non-disclosure provisions of the Confidentiality Act are consistent with Rule 11–504 and are to be given effect. We therefore reverse the district court and remand for a determination of whether the communications from the alleged victim to the counselors were made "in the course of the counselor's treatment of the victim for any emotional or psychological condition resulting from a sexual assault." This issue may be uncontested or the trial court may very well have to conduct an *in camera* interview or review of documents to make this determination. We leave this matter to the sound discretion of the trial judge.

{22} **IT IS SO ORDERED.**

WE CONCUR: PAMELA B. MINZNER, PATRICIO M. SERNA, and PETRA JIMENEZ MAES, Justices.

RICHARD C. BOSSON, Chief Justice (dissenting).

BOSSON, Chief Justice (dissenting).

{23} With reluctance, I respectfully dissent. In my mind, the majority opinion is wrong on the law, wrong on policy, and grossly unfair to this criminal Defendant.

{24} For thirty years now, since *State ex rel. Anaya v. McBride*, 88 N.M. 244, 539 P.2d 1006 (1975), and *Ammerman v. Hubbard Broadcasting, Inc.*, 89 N.M. 307, 551 P.2d 1354 (1976), *cert. denied*, 436 U.S. 906, 98 S.Ct. 2237, 56 L.Ed.2d 404 (1978), it has been settled law that this Court, and only this Court, may create a testimonial privilege. Unless authorized by the Constitution, the Legislature may not decide who may give testimony in a court of law. The decision to create a testimonial privilege remains a core function of the judiciary as a separate and equal branch of government. *See Ammerman*, 89 N.M. at 312, 551 P.2d at 1359.

{25} In no uncertain terms, this Court adopted a controlling rule, Rule 11–501 NMRA 2005, which provides: "Except as otherwise required by constitution, and except as provided in these rules or in other rules adopted by the supreme court, no person has a privilege to … refuse to be a witness." The language is straightforward. It does not say, "Except as the legislature may otherwise provide…." And it does not say, "Except as the legislature may provide, assuming we agree with what the legislature has done…." It says, "no person" can refuse to give testimony unless excused by the Constitution or this Court.

{26} For thirty years, we have said the same thing in our case law. In *Ammerman*, 89 N.M. at 312, 551 P.2d at 1359, we found a legislatively created privilege to be an unconstitutional incursion upon the doctrine of separation of powers. Our holding was unequivocal:

In view of our clear and unambiguous assertion in Rule 501 that no person has a privilege, except as provided by constitution or rule of this court—and no rule of this court grants a privilege to a journalist or newscaster—and in view of our equally plain and unambiguous assertion in our opinion in *State ex rel. Anaya v. McBride*, supra, that under our Constitution the Legislature lacks power to prescribe by statute rules of evidence and procedure, this constitutional power is vested *exclusively* in this court, and statutes purporting to regulate practice and procedure in the courts cannot be binding, we are able to reach no conclusion other than that the privilege purportedly created by [the Legislature] is constitutionally invalid and cannot be relied upon or enforced in judicial proceedings.

*Id.* (emphasis added).

{27} I note the use of the word "exclusively." The constitutional power to prescribe a testimonial privilege is vested "exclusively" in the courts. That means the power cannot simultaneously lie here and somewhere else, like the Legislature. When the majority states that *Ammerman* does not "categorically prohibit[ ] the Legislature from enacting legislation affecting practice or procedure," *see* Maj. Op. ¶ 9, I do not understand the reasoning. To the contrary, we said exactly that in *Ammerman*, 89 N.M. at 312, 551 P.2d at 1359, we categorically prohibited the creation of testimonial privileges in our courts by legislation. We overturned the Legislature's privilege, not because we disagreed with it or found it inconsistent, but because the legislature was overstepping its constitutional boundaries and intruding into an area in which power was vested "exclusively" in this Court. *Id.* In fact, we later adopted a news media-confidential source privilege similar to what we declared unconstitutional in *Ammerman*. *See* Rule 11–514 NMRA 2005. Our dispute with the Legislature in *Ammerman* was not about substance, it was very much about procedure and constitutional prerogative. With respect, I am compelled to conclude that the majority's statement about *Ammerman* is mistaken.

{28} We said much the same thing in *State ex rel. Attorney General v. First Judicial District Court*, 96 N.M. 254, 260, 629 P.2d 330, 336 (1981), in which we noted how different New Mexico's Rule 12–501 is from the more permissive federal rule. We concluded that, unlike practice elsewhere, New Mexico does not recognize those privileges rooted in the common law, unless required by the Constitution or provided in rules adopted by this Court. *Id.* This Court has never retracted either the language or the holdings of these two opinions, *Ammerman* and *First Judicial District*. We have been consistent in our solicitude regarding testimonial privilege.

{29} In other areas, we have not been so consistent. Accurately, the majority points out that at certain prescribed junctures our rules do permit a legislative voice in what might be called practice and procedure. In Rule 11–402 NMRA 2005, for example, we declared all relevant evidence is admissible, except as otherwise provided by constitution, by rule, or "by statute." In Rule 11–502 NMRA 2005, we recognized that when the Legislature requires a person to file a return or report, it may condition that requirement with a guarantee of confidentiality, even to the point of creating a limited testimonial privilege with respect to the contents of that report. Rule 11–502 is a good example of what we meant in *Ammerman*, and what we said in Rule 11–501, that no person has a privilege to refuse testimony "except as provided in these rules or in other rules adopted by the supreme court." We so "provided" in Rule 11–502.

{30} Unlike the privilege for statutory reports, however, this Court has never "provided" for a rape counselor privilege, nor has it ever "provided" for a statutory role in the creation of such a privilege. The case before us is not based on Rule 11–402; it is not based on Rule 11–502. It is not based on any other rule in which we have permitted the Legislature to act. It is based, instead, upon Rule 11–501, in which we have said unequivocally that the Legislature does *not* have authority to act.

{31} The majority relies heavily upon the Court of Appeals' opinion in *State v. Herrera*, 92 N.M. 7, 582 P.2d 384 (Ct.App.1978), but

for reasons I cannot fathom. As is stated, the majority reads *Ammerman, Herrera,* and *First Judicial District* together to provide a new framework of analysis. Maj. Op. ¶ 11. Yet unlike *Ammerman* and *First Judicial District, Herrera* was not a testimonial privilege case. It involved nothing more than a statutorily created definition of relevant evidence, declaring a rape victim's sexual history inadmissible under certain circumstances. *Herrera,* 92 N.M. at 7, 582 P.2d at 384. All the Legislature did with the statute at issue in *Herrera* was what we expressly allow it to do in Rule 11–402, and the statute was crafted so as to balance prejudice and probative value exactly as we direct in Rule 11–403 NMRA 2005. As an opinion of the Court of Appeals, *Herrera* made no pretense of modifying or limiting *Ammerman* and *First Judicial District,* opinions of this Court. In my mind, *Herrera* simply will not bear the weight the majority places upon it.

{32} As a matter of judicial policy it is, I suppose, a fair question whether we should change our precedent, overrule *Ammerman,* and enable the Legislature to create testimonial privileges by statute. Perhaps the better policy is that we should take a wait-and-see approach to legislation, as the majority suggests, leaving room for the Legislature to act unless we say it cannot. It may be, as some have suggested, that our policy has been too rigid, too confrontational. *See* Michael B. Browde & M.E. Occhialino, *Separation of Powers and the Judicial Rule–Making Power in New Mexico: The Need for Prudential Constraints,* 15 N.M. L.Rev. 407, 462–67 (1985).

{33} If we did decide to enable the Legislature to create testimonial privileges, there are several legitimate approaches we could take to do so. We could begin by amending Rule 11–501. A simple stroke of the pen would add "except as provided by statute" to the exceptions to the general rule prohibiting a person from refusing to be a witness. Or, we could codify a rape counselor privilege in our rules, much as this Court did in the aftermath of *Ammerman* with respect to the news media-confidential source privilege. The majority does neither, however, and concludes instead that its reasoning is somehow consistent with Rule 11–501 without the need for a new rule. I do not follow. If we do not amend Rule 11–501, or come up with a new rule, then we must change how we have interpreted Rule 11–501, and that means we must overrule *Ammerman.* Again, the majority declines, reasoning that its opinion is somehow consistent with *Ammerman.* Again, I do not follow.

{34} I believe there is something important in *Ammerman* that we should not disturb so easily. The decision to allow someone not to give testimony, and the balancing of policy considerations implicit in such a decision, goes to the heart of judicial authority. Courts are all about seeking the truth, and towards that end everyone, rich and poor, the most powerful and the most humble, can be compelled to give testimony. If we do not have exclusive control over our own courts and that truth-seeking process, then by what right can we claim to be an equal and independent branch of government?

{35} In my experience bright line rules can sometimes be helpful. Litigants know well in advance that privileges are the exclusive province of this Court. Judge Blackmer below knew it, as did the attorneys from both sides, none of whom argued for the position taken by this opinion. Bright line rules can also be helpful to the Legislature. A bright line rule can explain why legislative action is inappropriate. Sometimes it helps for a co-equal branch of government to clearly understand its limitations. The permissive rule presently envisioned by the majority provides no such protection for the judiciary. It simply provides an invitation to act; the Legislature loses nothing by enacting a privilege because we may eventually agree. And the Legislature will certainly advise us that it acts as always with a presumption of constitutionality.

{36} My troubles with the majority opinion do not end with its treatment of *Ammerman* and Rule 11–501. Even if *Ammerman* is no longer good law and our prior views about Rule 11–501 are inoperative, that does not end the inquiry. Assuming we adopt the majority's new reasoning about a shared role between the Legislature and this Court, that

does not explain how the rape counselor privilege, never recognized by this Court before today, can apply to this particular Defendant in this particular prosecution. *See* N.M. Const. art. IV, § 34 ("No act of the legislature shall affect the right or remedy of either party, or change the rules of evidence or procedure, in any pending case.").

{37} Ironically, I might well favor the rape counselor privilege on its merits. But Judge Blackmer had it quite right when he said that such a decision would create a new rule with respect to this criminal prosecution, which neither this Court nor the Legislature can do consistent with our state Constitution. This particular Defendant has a right to be tried under the rules as they existed at the time of his arrest and prosecution. At that time there was no constitutional rule of privilege applicable to rape counselors because we had not provided for one in our rules, and until today we had not provided for one in our case law. To now suggest, as the majority does, that the statutory privilege was valid and effective when enacted, despite the clear injunction of *Ammerman,* because we now say it is not inconsistent with a totally different judicially created privilege for psychotherapists, seems all too concerned about result and not sufficiently concerned about how we get there.

{38} The correct answer to the Article IV, Section 34, dilemma should be to give effect to the new rape counselor privilege when this Court recognizes it as such, and decides that the statutory privilege is consistent with our own rules of privilege. That is how I understand the majority to argue that the judiciary retains its constitutional authority and control over rules of privilege: that we decide what is consistent or inconsistent with our own rules. But if the statutory privilege is not valid until we recognize it to be so, then it cannot apply retroactively to this Defendant's criminal case. If, on the other hand, we are saying that the privilege was actually in effect and valid when enacted years ago by the Legislature, without any imprimatur from this Court, then we will have surrendered any pretense of control over testimonial privileges and the rules of practice and procedure that govern judicial proceedings.

{39} With great reluctance, the foregoing concerns impel me to register my dissent from the opinion of the majority.