The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number:

Filing Date: March 31, 2026

**No. A-1-CA-41744**

**STATE OF NEW MEXICO,**

Plaintiff-Appellant,

v.

**NICHOLAS SCHMIDT a/k/a**
**NICHOLAS ANDREW SCHMIDT,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Stan Whitaker, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Meryl E. Francolini, Assistant Solicitor General
Albuquerque, NM

for Appellant

Bennett Baur, Chief Public Defender
Santa Fe, NM
Steven J. Forsberg, Assistant Appellate Defender
Albuquerque, NM

for Appellee

**OPINION**

**WRAY, Judge.**

{1}     In this appeal, we consider whether the spousal privilege applies to protect communications between spouses regarding the abuse of a foster child. Rule 11-505(B) NMRA affords spouses "a privilege to refuse to disclose, or to prevent another from disclosing, a confidential communication by the person to that person's spouse while they were married." The privilege does not apply in "proceedings in which one spouse is charged with a crime against . . . a child of either." Rule 11-505(D)(1)(a). In the present case, the district court did not apply the Rule 11-505(D)(1)(a) exception and excluded statements made between Defendant and his spouse regarding the abuse of a foster child in their care. Because we conclude that a child who is entrusted by the state to the care of foster parents is "a child of either" spouse, we reverse.

**BACKGROUND**

{2}     Defendant and his spouse were licensed foster parents to B.B., who was two years old when he came into their care. Extensive, "head to toe" injuries were discovered during a medical exam of B.B., and he was removed from the couple's care. The investigation that followed revealed text messages between Defendant and his spouse that discussed the abuse of B.B.

{3} Defendant and his spouse were charged with child abuse and failure to report child abuse or neglect. The State filed a motion that sought a ruling from the district court about whether the spousal privilege would apply to the text messages or if the Rule 11-505(D)(1)(a) exception would permit the admission of the evidence. After a hearing, the district court ruled that the spousal privilege applied, because the State had not demonstrated a "significant indicia of a—parental kind of relationship status." The State appeals.

**DISUSSION**

{4} We generally "review a district court's evidentiary rulings for an abuse of discretion." *State v. Duran*, 2015-NMCA-015, ¶ 11, 343 P.3d 207. The State argues that our review should be de novo, because the district court misinterpreted Rule 11-505(D)(1)(a) and the spousal privilege does not shield communications between foster parents about the abuse of a foster child. Defendant maintains that the district court did not categorically reject the application of Rule 11-505(D)(1)(a), but instead determined that the State did not prove "the requisite parental relationship" in the present case. For this reason, Defendant contends that we need not construe the language of the privilege but only the district court's "specific application of the rule in this instance." In order to consider the State's arguments on appeal, we must evaluate the application of the law to the facts and "give effect to the purpose and intent of our Supreme Court" in promulgating Rule 11-505(D)(1)(a). *See State v.*

*Lucero*, 2023-NMCA-035, ¶ 18, 528 P.3d 762. Our review is therefore de novo. *See Allen v. LeMaster*, 2012-NMSC-001, ¶ 11, 267 P.3d 806 (reviewing de novo decisions involving the "construction of the law of privileges" (internal quotation marks and citation omitted)); *State v. Oppenheimer & Co.*, 2019-NMCA-045, ¶ 6, 447 P.3d 1159 ("Even when we review for an abuse of discretion, our review of the application of the law to the facts is conducted de novo." (alteration, internal quotation marks, and citation omitted)).

{5}     When reviewing a rule, we apply "the same rules of construction applicable to the interpretation of statutes." *State v. Lopez*, 2023-NMSC-011, ¶ 10, 529 P.3d 893 (internal quotation marks and citation omitted). To interpret a statute, we look to the language of the statute, "its history and background and how the specific statute fits within the broader statutory scheme." *Chaterjee v. King*, 2012-NMSC-019, ¶ 12, 280 P.3d 283. Applying these principles to our review of Rule 11-505(D)(1)(a), we consider the language of the spousal privilege exception according to its history and background as well as how the exception fits within the rules of privilege. *See State v. Evans*, 2023-NMCA-004, ¶ 7, 521 P.3d 1257 (considering the language of the rule, and if the rule is ambiguous, "its purpose in conjunction with other rules" in order to "seek guidance from the rule's language, history, and background."); *State v. Tarver*, 2005-NMCA-030, ¶ 9, 137 N.M. 115, 108 P.3d 1

("When statutes are related by subject matter, we read them together and construe them as a harmonious whole.").

{6}    Considering first the language of Rule 11-505(D)(1)(a), we conclude that the phrase "a child of either" is ambiguous. A rule is ambiguous "when it can be understood by reasonably well-informed persons in two or more different senses." *In re Gabriel M.*, 2002-NMCA-047, ¶ 12, 132 N.M. 124, 45 P.3d 64 (internal quotation marks and citation omitted). Rule 11-505(D)(1)(a) refers to "a child of either" spouse who would claim the privilege, which could reasonably be understood narrowly to refer only to a biological child or more broadly to encompass at least some or all of the following: an adopted child, a stepchild, a child over whom the spouse has some other legal authority, a child whose care has been entrusted to the spouse, and a child who is simply viewed or treated as a child of either. *See State v. Howell*, 1979-NMCA-069, ¶¶ 4, 7, 93 N.M. 64, 596 P.2d 277 (considering but not deciding whether the spousal privilege applied if the child was an adopted child or a stepchild of the spouse or where the spouse "intended to assume the status of parent to the child"); *State v. Michels*, 414 N.W.2d 311, 315 (Wis. Ct. App. 1987) (concluding that a similar statute was ambiguous because "reasonable persons could construe the 'child of either' exception [to the spousal privilege], to mean a child with a biological or legal relationship to the parent on the one hand, or any child living in a family-type setting on the other"). Given these reasonable, differing

understandings of the language "a child of either," we turn to the history and background of the spousal privilege exception for guidance in resolving the ambiguity. *See Evans*, 2023-NMCA-004, ¶ 7.

{7}    New Mexico law reveals little by way of history and background for Rule 11-505(D)(1)(a), but other jurisdictions with similar rules have shed some light on the purpose of this particular exception to the spousal privilege. Some jurisdictions indicate that the exception was enacted for the broad purpose of preventing "child abuse." *See Daniels v. State*, 681 P.2d 341, 345 (Alaska Ct. App. 1984); *see also State v. Sewell*, 205 A.3d 966, 979-80 (Md. 2019) (concluding that mandatory reporting requirements eliminated a spouse's expectation of privacy in communications regarding child abuse); *United States v. Bahe*, 128 F.3d 1440, 1446 (10th Cir. 1997) (recognizing a common law exception to the federal spousal privilege for "testimony relating to the abuse of a minor child within the household" because "[c]hild abuse is a horrendous crime"). Other jurisdictions have more narrowly determined that the exception is intended "to protect society from crimes against family members." *Dunn v. Superior Court*, 21 Cal.App.4th 721, 724 (Ct. App. 1993); *Michels*, 414 N.W.2d at 316 ("The 'child of either' exception was created to permit prosecution for crimes committed within the family unit."). In any event, courts often evaluate whether the purpose of the underlying spousal privilege is served in the context of allegations of child abuse by a spouse. *See Commonwealth*

*v. Hunter*, 60 A.3d 156, 159 (Pa. Super. Ct. 2013) ("Practically, it is important that courts recognize that excluding information may not always further the intended goal of a privilege and may, in fact, hinder the prosecution of legal proceedings intended to protect fragile members of society."); *Dunn*, 21 Cal.App.4th at 723-24 ("The exemption is grounded on the self-evident premise that marital harmony would be nonexistent in criminal actions where a child of either spouse is the victim of a crime committed by one of the spouses." (alteration, internal quotation marks, and citation omitted)); *Daniels*, 681 P.2d at 345 (explaining that the spousal-privilege policy to further martial harmony "must yield to the policy of preventing child abuse"); *Merritt v. State*, 339 So. 2d 1366, 1370 (Miss. 1976) ("A crime of personal violence against the child is a crime that destroys the conjugal relation and in essence is a controversy between husband and wife within the meaning of our statute."). In these jurisdictions, the goal of the spousal privilege is generally not served by excluding testimony related to child abuse.

{8}     We take our cue from these jurisdictions. The spousal privilege in New Mexico has been described in many ways, but the privilege essentially protects the marital relationship and prevents unwarranted invasions of privacy. *See State v. Gutierrez*, 2021-NMSC-008, ¶¶ 15-20, 482 P.3d 700.[1] Importantly, our Supreme

---

[1]In *Gutierrez*, our Supreme Court examined the continued viability of the spousal privilege, *id.* ¶¶ 21-37, and requested that the relevant Supreme Court rules committee consider "whether Rule 11-505 should be amended or abolished or

Court has also observed that privileges interfere "with the truth-seeking process of litigation" and that "'exceptions to the demand for every [person's] evidence are not lightly created nor expansively construed.'" *Albuquerque Rape Crisis Cntr. v. Blackmer*, 2005-NMSC-032, ¶¶ 18-19, 138 N.M. 398, 120 P.3d 820 (quoting *United States v. Nixon*, 418 U.S. 683, 710 (1974)). Based on these principles, we conclude that our Supreme Court intended for the exception as set forth Rule 11-505(D)(1)(a) to elevate the "truth-seeking process" during certain child-abuse prosecutions over protecting the personal relationships and the privacy rights of married adults. *See Blackmer*, 2005-NMSC-032, ¶ 18. With some understanding of intent and purpose in hand, we return to the original question: To *which* children does the language of Rule 11-505(D)(1)(a) apply?

{9}     We conclude that Rule 11-505(D)(1)(a) does not limit its reach to only biological children. In many contexts, New Mexico law permits the full legal extension of the parent-child relationship to nonbiological children. *See, e.g.*, NMSA 1978, § 32A-5-2(A) (1993) (providing that the purpose of the adoption statutes is to "establish procedures to effect a legal relationship between a parent and adopted child that is identical to that of a parent and biological child"); NMSA 1978, § 40-11A-201 (2009) (providing for multiple ways to establish a parental relationship).

should remain unchanged." *Gutierrez*, 2021-NMSC-008, ¶ 111. The relevant rules committee has not yet addressed the issue. *See* Rule 11-505 comm. cmt.

In other contexts, a nonbiological parent-child relationship may be partial or temporary. *See, e.g.*, NMSA 1978, § 32A-4-31(A) (2005) (defining the rights of a permanent guardian); NMSA 1978, § 40-10B-13(A) (2001) (defining the rights and duties of a kinship guardian as "the legal rights and duties of a parent except the right to consent to adoption of the child and except for parental rights and duties that the court orders retained by a parent"). As we have noted, this Court has suggested that Rule 11-505(D)(1)(a) applies to these types of legal, nonbiological parent-child relationships. *See Howell*, 1979-NMCA-069, ¶¶ 4, 7.

{10}     With this in mind, we see no reason why a foster child would not also be "a child of either" married foster parent for the purposes of Rule 11-505(D)(1)(a). We therefore hold—consistent with the persuasive holdings of courts in other jurisdictions—that the exception in Rule 11-501(D)(1)(a) applies to a child in the foster care of one or both spouses. *See Daniels*, 681 P.2d at 345 ("We believe that a foster child . . . , who is placed by the state and accepted by the foster parents in a foster home, should be entitled to the same protection as a natural or adopted child."); *Dunn*, 21 Cal.App.4th at 724 (seeing "no reason to exclude foster children from [the definition of 'a child of . . . either'], as it is consistent with the general legislative intent"); *State v. Brydon*, 626 S.W.2d 443, 452-53 (Mo. Ct. App. 1981) (explaining that "a crime against the child of the family is equivalent to a crime

against the spouse" and "[a] child committed to the protection of foster parents logically comes within that ambit").

{11} As Defendant notes, the district court did not rule to the contrary but instead determined that as a factual matter, the State had not established that the particular relationship here was sufficiently parental or that the relationship would be long term. We conclude that no such factual inquiry is necessary in this circumstance. A "foster parent" is a person licensed by Children, Youth & Families Department (CYFD) or a child placement agency "to provide care for children in the custody of" CYFD or a child placement agency. *See* NMSA 1978, § 32A-1-4(K) (2025).[2] By this definition, a child is placed in the care of a licensed foster parent by CYFD or any agency, which has taken custody of the child from the biological parents. The potentially temporary nature of that formal relationship does not suggest a reason why a foster child is not "a child of either" married foster parent after they have been entrusted with and have accepted the profound responsibility of providing for the care of the child.

{12} In the present case, because the spouses shared a foster-parent relationship with B.B., we need not consider whether a less formal relationship would qualify to

---

[2]Section 32A-1-4 was amended in 2022, 2023, and 2025, after the alleged criminal behavior in the present case. Apart from recompilation from Section 32A-1-4(I) (2019) to Section 32A-1-4(K), those amendments do not impact our analysis. We therefore refer to the current statute.

trigger Rule 11-505(D)(1)(a)'s exception or the factual showing that would be necessary under any such circumstances. *See Fevig v. Fevig*, 1977-NMSC-005, ¶ 7, 90 N.M. 51, 559 P.2d 839 ("A person is said to stand in loco parentis when [they] put[] [themselves] in the situation of a lawful parent by assuming the obligations incident to the parental relationship without going through the formalities necessary to a legal adoption" and with the intent "to assume toward the child the status of a parent."). Instead, we hold only that a foster child is "a child of either" spouse for the purposes of Rule 11-505(D)(1)(a).

**CONCLUSION**

{13}    We reverse and remand.

{14}    **IT IS SO ORDERED.**


_____
                              **KATHERINE A. WRAY, Judge**

**WE CONCUR:**


_____
**MEGAN P. DUFFY, Judge**


_____
**ZACHARY A. IVES, Judge**