IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2009-NMSC-025

Filing Date: May 12, 2009

Docket No. 30,654

STATE OF NEW MEXICO,

       Plaintiff-Respondent,

v.

ISAAC BELANGER,

       Defendant-Petitioner.

ORIGINAL PROCEEDING ON CERTIORARI
Ross C. Sanchez, District Judge

Hugh W. Dangler, Chief Public Defender
Nancy M. Hewitt, Appellate Defender
Santa Fe, NM

for Petitioner

Gary K. King, Attorney General
Martha Anne Kelly, Assistant Attorney General
Santa Fe, NM

for Respondent

OPINION

BOSSON, Justice.

{1}    More than twenty-five years ago, this Court's Rules of Criminal Procedure Committee ("the Committee") opined that use-and-derivative-use immunity for witnesses ("use immunity") should be available at the request of either the prosecution or the accused. Although that view had some limited support in federal case law, ultimately it did not prevail in our state jurisprudence. Since then, this Court has embraced the view that use immunity is available only at the behest of the prosecution.

**{2}** As will be discussed at length in this opinion, the case before us makes clear that there are times, however limited, when a trial court must exercise its own review and decide whether to grant use immunity to a defense witness, even without the concurrence of the prosecution. The legitimate needs of the prosecution can and must be balanced against the potential for erosion of important constitutional rights of the accused. In coming to this conclusion, we rely on New Mexico law, not federal precedents, and we reluctantly overrule some of our precedent to the extent those cases fail to recognize the critical distinction between our state's jurisprudence and the federal rules. We depart from our precedents cautiously, and only after concluding that our earlier opinions were either poorly reasoned, based on an unwarranted reliance on federal law, or both. Based on this departure from precedent, we reverse the Court of Appeals and remand to the district court for further proceedings consistent with this opinion.

## BACKGROUND

**{3}** A Bernalillo County grand jury indicted Isaac Belanger ("Defendant") on August 31, 2004, on one count of criminal sexual penetration of a minor ("CSPM"), two counts of attempted CSPM, three counts of battery, one count of kidnapping, and two counts of bribery of a witness. Defendant's niece, S.S., accused him of pinning her against a bathroom wall, forcing her to kiss him, putting his hand down her pants and penetrating her vagina with his finger. She was 12-years old at the time, and Defendant was 28. The incident allegedly took place at the house of Defendant's father (the girl's grandfather), after an argument about who was going to use the phone. Defendant has denied any wrongdoing. Defendant asserts, and the State does not dispute, that there are no other known witnesses to the alleged incident, and no physical evidence implicating Defendant. Thus, the credibility of S.S., as the sole eye-witness, would appear to be pivotal at trial.

**{4}** In pre-trial proceedings, Defendant attempted to interview another juvenile, D.P., against whom S.S. had leveled similar sexually related charges. The incident between S.S. and D.P. occurred just weeks before the incident involving Defendant. Defendant claims that prosecutors dropped the charges against D.P. after it became clear that S.S. had fabricated her claims against D.P. Thus, Defendant may try to use D.P. to attack S.S.'s credibility at trial. In response, the State denies that S.S. fabricated her claims against D.P., although the State acknowledges that the charges against D.P. were dismissed, and the State has no intention of bringing new charges against him.

**{5}** In response to Defendant's demands for an interview, D.P., acting on the advice of counsel, invoked his Fifth Amendment privilege against self-incrimination and refused to talk with Defendant. Defendant attempted to overcome D.P.'s Fifth Amendment assertion by asking the prosecutor to apply to the court for use immunity so that D.P. could testify without fear of being prosecuted based on what he said at trial or during the interview. The State refused to request immunity for D.P.

**{6}** Defendant applied to the district court for relief. Based on then-existing law, the

district court properly concluded that it had no power to grant immunity unless the prosecution applied for it. *See* Rule 5-116 NMRA (limiting immunity to application of the prosecutor). Nonetheless, after the prosecution made clear it would not apply for immunity, the district court advised the State that the court would dismiss the charges if the prosecution did not apply for immunity within one week. Before the deadline passed, the State again informed the court that it would not apply for immunity.

**{7}** The State appears to have concluded that D.P. had no valid Fifth Amendment right because the charges against him had been dismissed and the likelihood of further charges being lodged were "so remote as to be inconsequential." Because D.P. was "no longer exposed to any jeopardy from the events that formed the basis of the previous prosecution," the State regarded immunity as inappropriate. The district court disagreed, concluding that D.P.'s Fifth Amendment privilege conflicted irrevocably with Defendant's Sixth and Fourteenth Amendment rights to confrontation and due process of law. Because the State would not request immunity for D.P., the court dismissed the criminal case against Defendant. The State appealed and the Court of Appeals reversed in a published opinion, *State v. Belanger*, 2007-NMCA-143, 142 N.M. 751, 170 P.3d 530. The Court determined that the trial court's dismissal conflicted with *State v. Sanchez*, 98 N.M. 428, 432-33, 649 P.2d 496, 500-01 (Ct. App. 1982), and concluded that, except in cases of prosecutorial misconduct, courts have "no power to . . . fashion witness use immunity under the guise of due process." *Belanger*, 2007-NMCA-143, ¶ 6 (internal quotation marks and citation omitted). Defendant petitioned for review, and we granted certiorari. 2007-NMCERT-010, 143 N.M. 74, 172 P.3d 1286. We reverse.

**STANDARD OF REVIEW**

**{8}** This appeal implicates important constitutional rights, including the Fifth Amendment right against self-incrimination, the Sixth Amendment rights to confront witnesses and to receive compulsory process, and the Fourteenth Amendment right to due process of law, including the right to a fair trial, and therefore our review is de novo. *See State v. Brown,* 2006-NMSC-023, ¶ 8, 139 N.M. 466, 134 P.3d 753 (applying de novo standard where "important constitutional rights" are implicated (citing *State v. Attaway*, 117 N.M. 141, 145, 870 P.2d 103, 107 (1994) (applying de novo standard to "threshold constitutional issues"))).

**DISCUSSION**

**Witness Immunity**

**{9}** Defendant asserts that D.P.'s testimony is essential to his defense. He argues that without a grant of use immunity to D.P., Defendant's ability to confront his accuser and to obtain compulsory process, protected by the Sixth Amendment to the United States Constitution as well as Article II, Section 14 of the New Mexico Constitution, is compromised. Without these rights, Defendant asserts, his broader right to a fair trial,

guaranteed by the Fourteenth Amendment to the United States Constitution and by Article II, Section 18 of the New Mexico Constitution, is imperiled. Use immunity would solve this problem, according to Defendant, because it would require D.P. to testify, thus meeting Defendant's need, while protecting D.P.'s Fifth Amendment rights because nothing said by D.P. could later be used against him. *See Kastigar v. United States*, 406 U.S. 441, 453 (1972) (holding that "immunity from use and derivative use is coextensive with the scope of the privilege against self-incrimination, and therefore is sufficient to compel testimony over a claim of the privilege").

{10} The State, for its part, asserts that it had no obligation to apply for immunity for D.P. and that it was not obliged to justify or explain its reason. In essence, the State takes the position that the case must proceed to trial without D.P.'s testimony, regardless of what D.P. may or may not have to say about S.S. and her credibility.

**Use Immunity versus Transactional Immunity**

{11} We first discuss the important difference between use immunity and transactional immunity—a distinction that is critical to understanding the basis for our opinion, as well as the shortcomings we perceive in some of our earlier opinions. Transactional immunity involves a promise by prosecutors that a witness will not be prosecuted for crimes related to the events about which the witness testifies. *See Piccirillo v. New York*, 400 U.S. 548, 569 (1971) (Brennan, J., dissenting). In contrast, under a grant of use immunity, the prosecution promises only to refrain from using the testimony in any future prosecution, as well as any evidence derived from the protected testimony. *Kastigar*, 406 U.S. at 453. Under use immunity, the prosecution may still proceed with charges against the witness so long as it does not use or rely on the witness's testimony or its fruits. Transactional immunity, on the other hand, affords the witness a much broader immunity related to the entire transaction and not just the witness's testimony.

{12} Transactional immunity is broader than the Fifth Amendment privilege. *Id*. Use immunity, by contrast, is coextensive with the Fifth Amendment privilege. *Id.* With use immunity, both the prosecution and the witness are left in essentially the same position as if the witness had retained his Fifth Amendment privilege and never testified. The witness is not exposed to criminal liability for testimony given, and the prosecution loses little with respect to its ability to prosecute. All the State surrenders is the ability to use testimony which it otherwise never would have had. *See Sanchez*, 98 N.M. at 433-34, 649 P.2d at 501-02 (citing *Kastigar*, 406 U.S. 441, for proposition that use immunity "leaves the witness and the government in substantially the same position as if the witness had claimed his privilege in the absence of a grant of immunity"). The State, if it wishes to prosecute, retains the ability to use other, independently obtained evidence such as material it already had, or material it developed independently of the witness's testimony. *See United States v. Quatermain*, 613 F.2d 38, 40 (3d Cir. 1980); *see also Kastigar*, 406 U.S. at 460 (noting that after a grant of use immunity, the prosecution has "the affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the

4

compelled testimony").

**{13}** Our older cases occasionally blurred the distinction between use immunity and transactional immunity, and sometimes spoke in overly broad terms by concluding that, absent a constitutional provision or statute, courts could not grant any kind of immunity without prosecutorial consent. *See State v. Cheadle*, 101 N.M. 282, 286, 681 P.2d 708, 712 (1983); *Apodaca v. Viramontes*, 53 N.M. 514, 518, 212 P.2d 425, 427 (1949). More recent New Mexico jurisprudence makes clear that only transactional immunity is a legislative prerogative, because it amounts to a decision by the people to exclude an entire class of individuals from application of the state's criminal laws. *See State v. Brown*, 1998-NMSC-037, ¶ 63, 126 N.M. 338, 969 P.2d 313 (referring to the "legislative power of amnesty"). Granting use immunity, which is not a form of "amnesty," is an inherent function of the judiciary under New Mexico law and is governed by court rule. *Id*. ¶ 61 ("Therefore, to the extent that use immunity serves to compel testimony in a judicial proceeding and serves to establish an evidentiary safeguard to protect the right against self-incrimination, we conclude that it is within our power of 'superintending control over all inferior courts' of New Mexico to enact rules governing this type of [use] immunity.").

**The New Mexico Rule on Use Immunity**

**{14}** Unlike the federal use immunity rule, which is rooted in Congressional legislation, use immunity in New Mexico is governed by the Rules of Evidence, Rule 11-412 NMRA, the Rules of Criminal Procedure, Rule 5-116, and to a limited extent by statute, NMSA 1978, § 31-6-15 (1979). The only applicable and extant statute, Section 31-6-15, applies only to grand jury proceedings and not to testimony at trial. *Brown*, 1998-NMSC-037, ¶ 57; *State v. Summerall*, 105 N.M. 82, 83, 728 P.2d 833, 834 (1986). Outside the grand jury context, court rule, and not statute, governs a court's grant of use immunity to witnesses. *See Brown*, 1998-NMSC-037, ¶ 57.

**{15}** Rule 11-412 of our Rules of Evidence provides that evidence obtained under an immunity order, as well as any evidence derived from such evidence, may not be used against the person protected by that order with the exception of a charge of perjury based on false testimony. This is use immunity. Rule 5-116 of our Rules of Criminal Procedure provides that the court may issue a written order of immunity "upon the written application of the prosecuting attorney." Our cases have interpreted this to mean that immunity is available *only* upon application by the prosecutor. *See Cheadle*, 101 N.M. at 286-87, 681 P.2d at 712-13; *State v. Baca*, 1997-NMSC-045, ¶ 37, 124 N.M. 55, 946 P.2d 1066; *Sanchez*, 98 N.M. at 434, 649 P.2d at 502.

**{16}** Some older New Mexico opinions appear to have assumed, incorrectly, that the immunity *rules* (as opposed to the statute) derived their authority from a legislative grant of power to the courts. *See, e.g.*, *Viramontes*, 53 N.M. at 517-18, 212 P.2d at 427; *State v. Thoreen*, 91 N.M. 624, 627, 578 P.2d 325, 328 (Ct. App. 1978). However, more recent and better reasoned authority makes clear that while *transactional* immunity is a legislative

prerogative to be defined by statute, the grant of *use* immunity is a power which "inhere[s] in the judiciary." *Brown*, 1998-NMSC-037, ¶ 60. In the case before this Court, we consider not transactional immunity, but use immunity, which this Court defines in the exercise of its inherent judicial authority. Until today, this Court has limited use immunity to situations initiated by the "application of the prosecuting attorney." *Id*. ¶ 64.

**{17}** This Court's inherent rule-making power permits us to create rules of criminal procedure, evidence and other matters that fall within the realm of pleading, practice and procedure. *See generally Ammerman v. Hubbard Broad., Inc.*, 89 N.M. 307, 310, 551 P.2d 1354, 1357 (1976) (holding that rules governing testimonial privileges are solely within the court's power); *State ex rel. Anaya v. McBride*, 88 N.M. 244, 246-47, 539 P.2d 1006, 1008-09 (1975) (stating that the quo warranto procedural requirement is beyond the power of the legislature). More recent authority suggests that although the Court has "ultimate rule-making authority," that power is not necessarily exclusive, and may co-exist with harmonious legislative enactments. *See Albuquerque Rape Crisis Ctr. v. Blackmer*, 2005-NMSC-032, ¶¶ 5-9, 138 N.M. 398, 120 P.3d 820; *Maples v. State*, 110 N.M. 34, 39, 791 P.2d 788, 793 (1990) (Montgomery, J., dissenting). This power over procedural and evidentiary issues ultimately stems from the constitutional grant to this Court of "superintending control over all inferior courts." N.M. Const. art. VI, § 3; *see also Brown*, 1998-NMSC-037, ¶ 61 (same).

**{18}** The evolution of the criminal procedure rule on immunity, Rule 5-116, demonstrates the judiciary's authority to change it. In fact, this Court has frequently exercised its inherent rule-making power to alter the rules pertaining to immunity. For example, Rule 58, an earlier version of criminal procedure Rule 5-116, provided for transactional immunity. *See* Rule 5-116, Committee commentary; *Sanchez*, 98 N.M. at 433, 649 P.2d at 501. Without any authorizing legislation, the rule required the State to "forego the prosecution of the person for criminal conduct about which he is questioned and testifies." Rule 5-116, Compiler's Annotations (citing *Campos v. State*, 91 N.M. 745, 580 P.2d 966 (1978)).

**{19}** The Committee, exercising the power of this Court, amended the rule in 1979 to remove the reference to transactional immunity, and it has been a "use immunity" rule ever since. Later, the Committee, again acting under the authority of this Court and the Court of Appeals opinion in *Sanchez*, amended the commentary to specify that only the prosecution could apply for use immunity. *See* Rule 5-116, Committee commentary. The commentary had earlier posited that either the prosecution or the defense could apply for immunity. *Id.*

**{20}** Less than three months before the Court of Appeals ruling in *Sanchez*, the Committee commentary asserted that courts could unilaterally grant witness immunity, an assertion that in some ways resembles the rule we announce today. Rule 58 Final Draft, Committee commentary, 4/1982. The commentary noted that "in order to assure fundamental fairness," a defendant "may be entitled to a witness immunity order under the Fifth and Sixth Amendments of the United States Constitution." *Id.* This assertion followed a similar claim, in dictum, by the Court of Appeals prior to *Sanchez*, in *State v. McGee*, that

6

"[a court order] of use immunity may have been an appropriate way of accommodating the competing interests of the State and the defendant." 95 N.M. 317, 320, 621 P.2d 1129, 1133 (Ct. App. 1980).

{21} What we learn from this history is that use immunity in New Mexico courts has not remained static. It has evolved over the years as an exercise of inherent judicial authority over our state courts and, notably, in the absence of any contrary legislative expression pertaining to trials. We also understand that both courts and our rules committees have considered and discussed a rule similar to the one we announce today which broadens the ability of either party to request use immunity and compelled testimony for a witness. That approach was ultimately rejected in favor of the federal approach, which, as we will soon discuss, is not at all parallel to our own state rules.

**The Federal Rule on Use Immunity**

{22} Congress enacted the federal "use immunity" statute, 18 U.S.C. §§ 6001-6005, in 1970, and the United States Supreme Court upheld its constitutionality two years later, in *Kastigar*, 406 U.S. 441. It offers a study in contrast with the New Mexico rule. Unlike the New Mexico rule, the federal rule on witness immunity is purely statutory—a grant of authority from Congress to prosecutors. With the exception of *Government of Virgin Islands v. Smith*, 615 F.2d 964 (3d Cir. 1980), which located an inherent judicial power outside the statute, every federal court of appeals to squarely consider the issue has held that federal courts may not grant defense-witness use immunity—certainly not under the federal statute, and not outside the statute's reach either, although at least one case recognizes the hypothetical possibility of such an extra-statute grant. *See, e.g.*, *United States v. Turkish*, 623 F.2d 769, 777 (2d Cir. 1980).

{23} The federal statute provides that federal district courts "shall issue" an order providing for use immunity "upon the request of the United States attorney." 18 U.S.C. § 6003(a). As the majority of courts have interpreted the statute, federal district courts play little more than a ministerial role in administering use immunity under 18 U.S.C. §§ 6001-6005. *See, e.g.*, *Thompson v. Garrison*, 516 F.2d 986, 988 (4th Cir. 1975) ("The function of the district court is limited to determining whether the government's request for immunity complies with the statutory procedure."). There is one widely recognized exception.

{24} Where a court finds prosecutorial misconduct, it may force the prosecution to grant immunity or dismiss the case. New Mexico has recognized this prosecutorial misconduct exception as it applies to our own rules, and our courts may step in and grant witness immunity independent of the prosecution where prosecutors "deliberately intend to disrupt the fact-finding process." *State v. Crislip*, 110 N.M. 412, 415, 796 P.2d 1108, 1111 (Ct. App. 1990), *overruled on other grounds by Santillanes v. State*, 115 N.M. 215, 225 & n.7, 849 P.2d 358, 368 & n.7 (1993); *see also Baca*, 1997-NMSC-045, ¶ 39 ("barring a clear showing of prosecutorial misconduct, use immunity can only be sought by the prosecution").

**{25}** This exception is rarely applied, however, because prosecutorial misconduct of this sort is so difficult for defendants to prove. *See State v. Velasquez*, 99 N.M. 109, 112, 654 P.2d 562 (Ct. App. 1982) (noting that "the defendant has a difficult burden to show prejudice" in making out a case of prosecutorial misconduct in the grand jury context). Furthermore, some federal courts have held that under the federal immunity statute, they lack the power even to review prosecutorial immunity decisions about grants of immunity. *See, e.g.*, *United States v. Herman*, 589 F.2d 1191, 1203 (3d Cir. 1978). We find no instance in New Mexico where a court has granted use immunity on its own because of prosecutorial misconduct.

**{26}** The district court in this case found no prosecutorial misconduct. We disturb neither that finding nor our case law as to the prosecutorial misconduct exception. We highlight it only to show that as a practical matter it leaves little, if any, role for courts in the federal system, and under the majority rule in the state systems.

**{27}** Given that the federal rule is legislatively based, it is not surprising that an overwhelming majority of federal courts have held that courts have no inherent power to grant use immunity to a defense witness without the consent of the prosecution and in the absence of prosecutorial misconduct. *See, e.g.*, *United States v. Lenz*, 616 F.2d 960, 962-63 (6th Cir. 1980) ("While use immunity for defense witnesses may well be desirable, its proponents must address their arguments to Congress, not the courts." (Citation omitted.)); *United States v. Smith*, 542 F.2d 711, 715 (7th Cir. 1976); *United States v. Alessio*, 528 F.2d 1079, 1081 (9th Cir. 1976); *Thompson*, 516 F.2d at 988.

**{28}** Although it is clear that federal courts have rejected inherent judicial authority to grant defense witness immunity, the United States Supreme Court, as well as several federal appeals courts, have recognized inherent judicial power to grant immunity in other contexts, in order to protect constitutional rights. *See Simmons v. United States*, 390 U.S. 377, 394 (1968) (finding it "intolerable that one constitutional right should have to be surrendered in order to assert another," and holding that testimony made by a defendant in a Fourth Amendment suppression hearing cannot be used at trial unless he fails to object); *In re Grand Jury Investigation*, 587 F.2d 589, 597 (3d Cir. 1978) (recognizing use immunity for testimony predicate to Speech and Debate Clause).

**{29}** State courts also appear to have uniformly rejected judicially imposed defense-witness immunity in the absence of prosecutorial misconduct. *See, e.g.*, *State v. Jeffers*, 661 P.2d 1105, 1125 (Ariz. 1983) (in banc); *Harding v. People*, 708 P.2d 1354, 1358 (Colo. 1985) (en banc); *State v. Roberts*, 574 A.2d 1248, 1251 (Vt. 1990). Some states recognize the hypothetical possibility that a case could arise in which judicially imposed immunity would be necessary. *See, e.g.*, *People v. Hunter*, 782 P.2d 608, 616 (Cal. 1989).

**{30}** Over the years, periodic expressions of support have surfaced for judicially ordered use immunity. *See, e.g.*, *United States v. Gaither*, 539 F.2d 753, 754-55 (D.C. Cir. 1976) (Bazelon, C. J., concurring in denial of rehearing en banc); *United States v. Leonard*, 494

8

F.2d 955, 985 n.79 (D.C. Cir. 1974) (Bazelon, C. J., concurring in part and dissenting in part); *United States v. La Duca*, 447 F. Supp. 779, 786 (D.N.J. 1978) ("The availability of use immunity can protect the government's interest in potential future prosecution of a witness while also satisfying the interest of the criminal defendant in the presentation of testimony which can exculpate him."). The concept has also garnered some enthusiastic support in academia. *See generally* Peter Westen, *The Compulsory Process Clause*, 73 Mich. L. Rev. 71, 166-70 (1974); Barbara A. Reeves, Notes, *A Re-examination of Defense Witness Immunity: A New Use for Kastigar*, 10 Harv. J. Legis. 74 (1972); Notes, *The Sixth Amendment Right to Have Use Immunity Granted to Defense Witnesses*, 91 Harv. L. Rev. 1266 (1978); Note, *Separation of Powers and Defense Witness Immunity*, 66 Geo. L.J., 51 (1977); Leonard N. Sosnov, *Separation of Powers Shell Game: The Federal Witness Immunity Act*, 73 Temp. L. Rev. 171 (2000).

**The New Mexico Rule-Making Authority Differs from the Federal Model**

**{31}**     Under the federal Constitution, Congress exercises considerable control over rules and procedure of the federal courts, and where the judicial branch does have its own power to promulgate rules, it is largely on authority delegated by Congress. *See Mistretta v. United States*, 488 U.S. 361, 385-88 (1989) (explaining Congress's power to regulate court procedure, or to delegate that power). By contrast, the New Mexico Constitution has always afforded the judiciary virtually independent control over inferior tribunals, as well as court rules. Under the New Mexico Constitution, the New Mexico Legislature has no power akin to the constitutionally mandated power of Congress to "constitute Tribunals inferior to the supreme Court," U.S. Const. art. I, § 8, cl. 9. This power of Congress to create the federal court system, supplemented by the authority granted by the Necessary and Proper Clause, U.S. Const. art. I, § 8, cl. 18, has been understood to give Congress the power "to prescribe rules of evidence and standards of proof in the federal courts." *Vance v. Terrazas*, 444 U.S. 252, 265 (1980); *see also id.* at 266 (noting that such power is "undoubted and has been frequently noted and sustained"); *Hanna v. Plumer*, 380 U.S. 460, 472 (1965) (Congress has "power to make rules governing the practice and pleading" in federal courts). By contrast, the New Mexico Constitution itself creates the courts inferior to this Court, while leaving the Legislature residual power to create "other courts inferior to the district courts as may be established by law from time to time in any district, county or municipality of the state." N.M. Const. art. VI, § 1; *see also Stout v. City of Clovis*, 37 N.M. 30, 33, 16 P.2d 936, 938 (1932) (same).

**{32}**     It is clear, then, that this Court exerts an authority over its own courts, and therefore its own rules, that federal courts lack. But even if that were not true, we could comfortably conclude that the federal immunity rule is quite unlike our own rule. The federal immunity statute, which is the first and last word on federal immunity, explicitly grants the immunity power to prosecutors. Our statute does not, and does not even apply beyond the grand jury. The portion of our immunity law which does specify prosecutorial authority is Rule 5-116 of our Rules Criminal Procedure, which, as we have already noted, is within our inherent authority to change. *Albuquerque Rape Crisis Ctr.*, 2005-NMSC-032, ¶ 5. We have

9

amended rules in the past, as well as jury instructions, by court opinion. *See State v. Pieri*, No. 31,119, slip op. at 25 (N.M. Sup. Ct. April 23, 2009); *State v. Balderama*, 2004-NMSC-008, ¶ 38 n.4, 135 N.M. 329, 88 P.3d 845 (amending a portion of the Uniform Jury Instructions).

{33}    Our conclusion that this Court controls use immunity rules flows naturally from the well-accepted proposition that New Mexico courts control issues of evidence and testimony—a proposition which is far less true in the federal system. In granting use immunity, courts are acting upon their inherent power to control their courtroom and to establish procedural rules. *See State ex rel. Bliss v. Greenwood*, 63 N.M. 156, 161-62, 315 P.2d 223, 227 (1957) (noting that courts have inherent power to hold non-compliant witnesses in contempt); *Ammerman*, 89 N.M. at 309-12, 551 P.2d at 1356-59 (stating that courts have power over certain privileges as matters of evidence). A long line of cases in this state support the proposition that the control of testimony is a judicial prerogative. *See Brown*, 1998-NMSC-037, ¶ 61; *Greenwood*, 63 N.M. at 162, 315 P.2d at 227 (noting and discussing the contempt power of courts); *Albuquerque Rape Crisis Ctr.*, 2005-NMSC-032, ¶ 34 (Bosson, C.J., dissenting) ("The decision to allow someone not to give testimony, and the balancing of policy considerations implicit in such a decision, goes to the heart of judicial authority."); Rule 11-501 NMRA (stating that "no person has a privilege to . . . refuse to be a witness . . . [or] refuse to disclose any matter" except as provided by constitution or court rules).

{34}    Some of our cases even suggest that the control of court rules on evidence and procedure is an exclusive judicial power, and that the Legislature has no role. *See Ammerman*, 89 N.M. at 312, 551 P.2d at 1359. While we have recently tempered our reliance on this theory of judicial exclusivity, *see Albuquerque Rape Crisis Ctr.*, 2005-NMSC-032, ¶ 5, this Court has always been understood to govern its own decisions on procedure, pleading and other core judicial functions. *See* Michael B. Browde & M.E. Occhialino, *Separation of Powers and the Judicial Rule-Making Power in New Mexico: The Need for Prudential Constraints*, 15 N.M. L. Rev. 407 (1985) (charting an increasingly court-centered power over rules of procedure and pleading, but also noting, at 427, that New Mexico had, at least until the 1930's, a "long tradition of shared responsibility for rule-making").

{35}    In conclusion, New Mexico use immunity law, unlike its federal counterpart, is a creature of the courts, and therefore amenable to judicial change. By virtue of our decisional law, as well as this Court's superintending control, we have more latitude than those courts which have addressed this issue in other jurisdictions. And at the risk of overstating the obvious, our Legislature has not expressed any views, contrary or otherwise, on use immunity at trial and on the role of the prosecutor. Therefore, in exercising our "ultimate rule-making authority" over procedure and pleading, *Albuquerque Rape Crisis Ctr.*, 2005-NMSC-032, ¶ 5, we have no doubt that this Court has the authority to permit district courts to grant use immunity in limited circumstances with or without the concurrence of the prosecutor.

10

**{36}** To the extent our precedents hold differently, they are no longer persuasive for all the reasons discussed herein, and we overrule them on that point of law. For example, in both *Cheadle*, 101 N.M. at 286-87, 681 P.2d at 712-13, and *Baca*, 1997-NMSC-045, ¶ 37, we did not discuss the important distinction between federal law and our own jurisprudence, or for that matter the vital difference between use immunity and testimonial immunity. Instead, both cases appeared to conclude, based on the federal model, and without much analysis or discussion, that prosecutorial control over the immunity process could not be altered absent constitutional or statutory authority. As we have explained, our prior adherence to the federal paradigm and its grant of prosecutorial control over use immunity no longer withstands critical analysis. We overrule both cases with respect to that conclusion, holding that our courts do have the authority to grant a witness use immunity under certain limited circumstances.[1]

**{37}** Ironically, the Court of Appeals opinion in *Sanchez*, 98 N.M. 428, 649 P.2d 496, that preceded *Cheadle*, 101 N.M. 282, 681 P.2d 708, and *Baca*, 1997-NMSC-045, is in accord with today's opinion, to the extent that it implicitly recognized our judiciary's independent authority to alter immunity rules, a power not granted to federal courts. However, the *Sanchez* Court determined that this distinction with federal law "does not warrant adoption here of a different result" from that followed by federal jurisdictions and continued to honor the prosecutor's control over the immunity process. *Sanchez*, 98 N.M. at 433, 649 P.2d at 501. Today we come to a different conclusion about whether to follow federal practice, but we draw comfort from the *Sanchez* Court's earlier recognition that ultimately the decision to follow federal authority is ours alone to make. Accordingly, we overrule *Sanchez* as to its ultimate conclusion. We also hereby amend Rule 5-116 to delete the words "upon the written application of the prosecuting attorney," and refer the matter to the Rules of Criminal Procedure Committee for further review.[2]

**{38}** In order to guide district courts seeking to determine whether court-granted immunity is appropriate, we establish the following overview for such determinations, which also incorporates the applicable elements of Rule 5-116 and Rule 11-412. Before granting use immunity to a defense witness over the opposition of the prosecution, district courts should perform a balancing test which places the initial burden on the accused. The defendant must

---

[1]Our research indicates that *Sanchez*, *Cheadle* or *Baca*, and sometimes all three, have been cited with some frequency for the proposition that New Mexico courts have no independent authority to grant use immunity to witnesses. *See McGee v. Crist*, 739 F.2d 505, 508-09 (10th Cir. 1984); *State v. Saiz*, 2008-NMSC-048, ¶¶ 50-51, 144 N.M. 663, 191 P.3d 521; *State v. Saavedra*, 103 N.M. 282, 286, 705 P.2d 1133, 1137 (1985); *Crislip*, 110 N.M. at 415, 796 P.2d at 1111.

[2]This Court generally carries out the specific wording of rule changes by way of rules committees, and we can see no reason to depart from that custom here. We therefore leave it to the Committee to determine the particulars of how Rule 5-116 should be worded.

show that the proffered testimony is admissible, relevant and material to the defense and that without it, his or her ability to fairly present a defense will suffer to a significant degree. If the defendant meets this initial burden, the district court must then balance the defendant's need for the testimony against the government's interest in opposing immunity. A court cannot determine whether a judicial grant of use immunity is necessary "without assessing the implications upon the Executive Branch." *Turkish*, 623 F.2d at 776. In opposing immunity, the State must demonstrate a persuasive reason that immunity would harm a significant governmental interest. If the State fails to meet this burden, and the defendant has already met his burden, the court may then exercise its informed discretion to grant use immunity which our appellate courts would review for abuse of discretion.

**Application to the Present Case**

**{39}** Because the present case came to us before it went to trial, the record is underdeveloped. But at least two important aspects of the case appear to be clear enough. The first is that the State's explanation of why it refused to grant D.P. use immunity is unpersuasive and practically non-existent. The second is that Defendant's ability to present an effective defense arguably may suffer if he is unable at least to explore D.P.'s testimony. We cannot rule out at this point that D.P.'s testimony may be material to Defendant's theory of the case. We leave it to the district court on remand to pursue this issue at greater length. We do not restrict the court's ability on remand to decide anew whether use immunity is ultimately essential to Defendant in this particular case and, if so, whether to grant use immunity to D.P. All we decide, at this juncture, is that the district court has the power to consider the grant of use immunity under the circumstances. Because of the lack of a developed record, we also cannot say at this juncture which of D.P.'s constitutional rights, if any, may be imperiled. We leave it to the district court to consider, in light of further fact-finding, whether it is the Sixth Amendment rights of confrontation or compulsory process, or simply the broader Fourteenth Amendment right to a fair trial. We further note that immunity for the purposes of an in-camera interview is not necessarily the same as immunity for purposes of trial. That is, a district court's decision to grant immunity for the purpose of understanding what the witness's testimony at trial will be, does not bind that court to a grant of immunity at trial. The two decisions are separate. Immunity for one purpose does not equate to immunity for the other.

**{40}** As for the State's refusal to grant immunity, the prosecution asserted that it had no intent to charge D.P. but, nonetheless, refused to apply for immunity. The State declined, not because prosecutors had any intention of pursuing further charges, or because they believed a case might later arise against D.P., or because they believed the general interests of justice would be advanced. The State appears to have refused to grant immunity simply because it did not want to and opposed anyone deciding differently.

**{41}** The prosecution's stated rationale was twofold. First, the State asserted that D.P. had no valid Fifth Amendment right because the case against D.P. had already been adjudicated and the State had no plans to pursue further charges. Second, the prosecution asserted "the

12

general principle" that the State should not be "forced to grant immunity every time the defense request[s] it." The State invoked the possibility of a "flood gate" opening to "every Tom, Dick and Harry coming into this system and saying, well, you need to grant me immunity."

**{42}**    The first claim is as circular as it is unpersuasive. If the prosecutor truly had no plans to prosecute, and could foresee no set of facts in which Defendant *might* be prosecuted, then the State stands to lose very little by granting D.P. use immunity.

**{43}**    To successfully assert a Fifth Amendment privilege, a witness must have "reasonable cause to apprehend danger from a direct answer" of a question. *Hoffman v. United States*, 341 U.S. 479, 486 (1951). Further, the danger of prosecution must be "real and appreciable." *Brown v. Walker*, 161 U.S. 591, 599 (1896). But the Fifth Amendment right against self-incrimination does not vanish merely because the prosecution claims it will not prosecute. *See United States v. Jones*, 703 F.2d 473, 478 (10th Cir. 1983) ("Once the court determines that the answers requested would tend to incriminate the witness, it should not attempt to speculate whether the witness will in fact be prosecuted."). It is broadly recognized that, barring a number of well-defined exceptions, the failure to invoke the Fifth Amendment waives its protections. *See United States v. Monia*, 317 U.S. 424, 427 (1943). The fact that a prosecutor has promised not to prosecute would not change this analysis, possibly barring some sort of contractual agreement the likes of which are absent in this case. Furthermore, it is clear that there are many charges that could reasonably result from revelations made by D.P. in his testimony, and the district court so found.

**{44}**    The second basis for the prosecutor's refusal reveals the hazards of giving the State sole and essentially unchecked control over immunity determinations. The assertion that use immunity should not be granted in D.P.'s case because of "the general principle" that it would encourage others to seek immunity is no justification at all in Defendant's particular case. Carried to its logical conclusion, it would mean there is essentially *never* an appropriate time for use immunity. This highlights the fundamental problem with the current rule: it puts the prosecution in control of critical constitutional rights of the accused, while excluding the moderating influence of an impartial judiciary.

**{45}**    It is true that prosecutors have a duty to serve the broad interests of justice by ensuring the integrity and fairness of the criminal justice system, and not just tally up convictions. *See State v. Cooper*, 2000-NMCA-041, ¶ 15, 129 N.M. 172, 3 P.3d 149 ("The sole duty of a prosecutor is to see that justice is done."); *State v. Brule*, 1997-NMCA-073, ¶ 18, 123 N.M. 611, 943 P.2d 1064 ("The prosecutorial role is to pursue a charging pattern that reconciles the community interest in proper enforcement of the law and the interest, shared by the community and the defendant, in fairness to the defendant."), *rev'd on other grounds*, 1999-NMSC-026, ¶ 15, 127 N.M. 368, 981 P.2d 782. But prosecutors are also, by definition, partisan combatants in our adversarial system. It has always been the role of courts in this system to mediate this kind of conflict between the prosecution and the defense.

**{46}** The State's grounds for refusing immunity here are notably weaker than prior justifications in our other immunity cases. In *Sanchez*, 98 N.M. at 431, 649 P.2d at 499, the defendant, an alleged car thief, proposed to put on the stand a man who would testify that it was he, the witness, and not the defendant who committed the crime. The district court refused to grant use immunity, and the Court of Appeals affirmed. Unlike the State in the present case, prosecutors in *Sanchez* had a clear and undeniable desire to prosecute the proposed defense witness for the underlying crime if the jury believed his testimony. In the present case, the witness is not confessing to any part in the crime for which Defendant is charged, and the State claims no interest in prosecuting the witness even for perjury.

**{47}** In *Cheadle*, 101 N.M. at 286-87, 681 P.2d at 712-13, a murder defendant proposed to put on the stand a witness who would testify that the accused was with him, the witness, the night of the murders. The district court refused to grant immunity to the proposed witness, and this Court affirmed. *Id.* at 287, 681 P.2d at 713. The State's reasons for rejecting immunity were more compelling than in the present case. If the defense witness testified as proffered, the State would have a legitimate interest in prosecuting the witness for harboring a fugitive.[3]

### Foundations of the Majority Immunity Rule

**{48}** In coming to the decision we announce today, we are not unmindful of the policy concerns raised in other forums against allowing courts to grant immunity without the concurrence of the prosecution. We address the principal concerns and our reasons for taking a different view. Underlying all of these concerns is a fear about the judiciary encroaching on the authority of the legislative and executive branches.

### Separation of Powers

**{49}** The fundamental concern about giving courts unilateral authority to grant use immunity is that doing so invades the province of either the legislative branch, the executive branch, or both. *See, e.g.*, *United States v. Angiulo*, 897 F.2d 1169, 1191 (1st Cir. 1990). The roots of these fears run deep. As the United States Supreme Court noted in detail in *Kastigar*, 406 U.S. at 443, immunity statutes are a tradition spanning more than two centuries of Anglo-American jurisprudence. Such statutes generally grant the power of immunity to prosecutors, not to courts.

---

[3]In noting the relative strength of the defense witness's arguments in these cases, we do not purport to pre-determine the outcome of any future cases with facts similar to *Sanchez* or *Cheadle*. Because of the fact-intensive and case-specific analysis which the district court must carry out in determining whether to grant defense witness immunity, it is of course impossible to anticipate how the principles announced today will play out in any given set of facts.

**{50}**     As we have previously discussed, in the instance of transactional immunity we agree that separation-of-powers concerns resonate deeply, because transactional immunity amounts to a decision not to prosecute at all.  The decision to grant this broad and sweeping immunity is one which courts are not well-suited to make.  *See Brown*, 1998-NMSC-037, ¶ 59.  Furthermore, the determination of whom and when to prosecute, while not entirely exempt from judicial review, lies nonetheless at the heart of the prosecutor's powers.  *See State v. Ogden,* 118 N.M. 234, 240-41, 880 P.2d 845, 851-52 (1994); *see also Boone v. Kentucky*, 72 Fed. Appx. 306, 307 (6th Cir. 2003) (noting that absolute immunity extends to a prosecutor's decision "on whether to prosecute a case").

**{51}**     There are good reasons for prosecutors to decide unilaterally whom to prosecute, as well as when and when not to prosecute.  Many courts, federal and state, have amply expressed these reasons.  *See, e.g.*, *United States v. Cox*, 342 F.2d 167, 171 (5th Cir. 1965); *Application of Hassan v. Magistrates Court of New York*, 20 Misc. 2d 509 513-14 (1959); *Murphy v. Sumners*, 54 Tex. Crim. 369, 370 (1908).

**{52}**     According to the federal rule, courts are essentially powerless to consider the constitutional rights of a defendant in the case of immunity for defense witnesses. *See, e.g.*, *Turkish*, 623 F.2d at 773-74.  Although this is the majority position, it is nonetheless an extreme one.  It is rare in criminal jurisprudence that a court is completely foreclosed from enforcing or protecting the constitutional rights of the accused.  The anomaly is particularly striking in the instance of use immunity, which is much more akin to a classic judicial function than is the granting of transactional immunity.

**{53}**     We fully acknowledge that the imposition of use immunity, though less burdensome to prosecutors than transactional immunity, may still pose significant challenges to the prosecution.  District courts considering whether to grant use immunity should seriously consider these difficulties.   Under traditionally recognized use immunity rules, the government retains a "heavy burden" to show that its case against an immunized witness is not derived from the immunized testimony.  *Kastigar*, 406 U.S. at 461.  Furthermore, a prosecutor may feel compelled to curtail cross-examination of a witness granted use immunity, in order to limit the potential universe of testimony that the witness can later claim was used in a subsequent prosecution.  We recognize that these concerns are real, and that the burden on prosecutors even for use immunity can be substantial.  *See State v. Vallejos*, 118 N.M. 572, 577, 883 P.2d 1269, 1274 (1994) (stating that in order to carry its burden, the State must present evidence, not just argument, and must make a preponderance showing).  We have previously noted that when the State grants use immunity, it runs a "grave risk" that the future prosecution of an immunized witness for past crimes "may, as a practical matter, be impossible." *Id.* at 580, 883 P.2d at 1277 (internal quotation marks and citation omitted); *see also United States v. North*, 910 F.2d 843, 862 (noting that, when a witness is granted use immunity, the government "is taking a great chance that the witness cannot constitutionally be indicted or prosecuted"), *opinion withdrawn and superseded in part on reh'g*, 920 F.2d 940 (D.C. Cir. 1990).

**{54}** However, we also recognize that prosecutors deal regularly with use immunity rules, and are more than capable of successful prosecutions despite them. *See, e.g.*, *State v. Olivas*, 1998-NMCA-024, ¶ 7, 124 N.M. 716, 954 P.2d 1193 (rejecting defendant's argument that prosecution used immunized statements in violation of *Kastigar*). This Court has established certain guidelines for separating immunized testimony from other evidence, *see Vallejos*, 118 N.M. at 577-78, 883 P.2d at 1274-75, and clear rules are also available elsewhere. *See* U.S. Attorneys' Manual, U.S. Department of Justice, *Criminal Resource Manual* § 726, *Steps to Avoid Taint* (1997), available at http://www.usdoj.gov/usao/eousa/foia_reading_room/usam/ title9/crm00726.htm. We are confident that our state's district attorneys can and will produce similar guidelines for defense witnesses. Under the balancing test, we announce today, prosecutors have ample opportunity to argue to district courts that the burdens of use immunity would so hinder their ability to prosecute that they outweigh whatever interest the defendant may have in obtaining witness immunity. Ultimately, the trial court will have to decide on a case-by-case basis.

### Clogging the Courts

**{55}** In its briefing before this Court, as well as its argument to the district court, the State justified its refusal to grant immunity, in part, on fears that granting immunity would open the "floodgate" to defense witnesses demanding immunity for their testimony. As a result of today's opinion, district courts may see an increase in requests for defense witness immunity, but a desire for efficiency is no reason to withhold testimony which could provide essential constitutional protection to defendants. A desire for judicial expediency provides no excuse to short-change a defendant in his quest for constitutional protection. *See United States v. McIver*, 688 F.2d 726, 731 (11th Cir. 1982) (noting the "futility of attempting to substitute efficiency for constitutional requirements of due process"). Furthermore, we have long noted that district courts have supervisory control over the proceedings before them, and are fully capable of quickly dispatching meritless arguments. *See Pizza Hut of Santa Fe, Inc. v. Branch*, 89 N.M. 325, 327, 552 P.2d 227, 229 (Ct. App. 1976) ("[W]e have held that trial courts have supervisory control over their dockets and inherent power to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."). With these well-established principles, courts will be able to prevent needless and time-consuming mini-trials over the issue of witness immunity.

### "Immunity Baths"

**{56}** Grants of immunity, whether made by prosecutors or by the courts, are inherently subject to abuse by witnesses. A witness may lie, or alter his testimony, in order to receive immunity. In the case of defense witness immunity, the risk is in some senses two-fold. For example, a friend of the accused may testify falsely under an immunity grant, stating that he, and not the accused, is guilty of the crime. Confused thereby, the jury may be unable to decide to convict beyond a reasonable doubt. With the grant of immunity, the prosecution may be left without a case, and the real perpetrator, either one in this hypothetical scenario, is never held accountable. Some courts have described this so-called "immunity bath"

16

technique as a basis for not permitting judicially granted immunity. *See, e.g.*, *In re Kilgo*, 484 F.2d 1215, 1222 (4th Cir. 1973).

**{57}** We recognize the concern is legitimate. However, where the issue is use immunity alone, and not transactional immunity, the concern largely, though not entirely, diminishes. The incentive for a witness to lie in exchange for mere use immunity is small. In the case of transactional immunity, the lying witness can secure for himself freedom from prosecution for a series of events in which he may have been involved. With use immunity, such a witness receives virtually nothing in return for his lie. The prosecution does not promise to refrain from prosecuting for the events described, but only for the testimony itself. Furthermore, use immunity does not protect against prosecution for perjury. *See* Rule 11-412 (stating that evidence or testimony obtained after a grant of use immunity may not be used against a person compelled to testify, "except a prosecution for perjury committed in the course of the testimony").

**{58}** And yet the incentive for prosecutors to grant defense witness immunity is small. Given the certainty that such testimony cannot help a prosecutor's case, it is not surprising that prosecutors grant immunity to defense witnesses only sparingly, if at all. The United States Department of Justice as a matter of policy mandates that prosecutors will not grant immunity to defense witnesses "except in extraordinary circumstances where the defendant plainly would be deprived of a fair trial." U. S. Attorneys' Manual, available at http://www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/23mcrm.htm#9-23.214. We found no cases mentioning such a grant, while immunity grants to State witnesses are legion. *See, e.g.*, *Vallejos*, 118 N.M. at 574, 883 P.2d at 1271; *Brown*, 1998-NMSC-037, ¶¶ 5-10, *State v. Lunn*, 82 N.M. 526, 529, 484 P.2d 368, 371 (Ct. App. 1971) (discussing *Dutton v. Evans*, 400 U.S. 74 (1970)).

**{59}** While the justifications for vesting immunity power solely in the prosecution are strong, particularly in the federal system, they are weaker under New Mexico law. As we have discussed, the policy grounds for sole prosecutorial authority on this issue are persuasive for transactional immunity, but much less so for use immunity—a distinction which our case law in the past has failed to fully make. In asking our district courts to balance the various needs and rights with respect to use immunity, we are merely asking them to do what they do with many issues in nearly every phase of a criminal trial: mediate between the defendant and the State. This is the kind of decision district courts are well-suited to make. The constitutional stakes are high enough in the instance of use immunity that the court should have some role. In short, we conclude that while the reasons for unfettered prosecutorial control over use immunity are in some instances strong, they do not overcome the need for judicial intervention in every case.

**CONCLUSION**

**{60}** We reverse the Court of Appeals and remand to the district court to apply the new rule and balancing test we announce today. Our holding in this case applies prospectively

17

and to all pending cases which have not yet gone to trial as of the date of this Opinion. *See Pieri*, No. 31,119, slip op. at 25-26.

**{61}    IT IS SO ORDERED.**

_____
**RICHARD C. BOSSON, Justice**

**WE CONCUR:**

_____
**EDWARD L. CHÁVEZ, Chief Justice**

_____
**PATRICIO M. SERNA, Justice**

_____
**PETRA JIMENEZ MAES, Justice**

_____
**CHARLES W. DANIELS, Justice**

**Topic Index for *State v. Belanger,* No. 30, 654**

| | |
|---|---|
| **CT** | **Constitutional Law** |
| CT-NM | New Mexico Constitution, General |
| CT-SP | Separation of Powers |
| CT-RF | Right to Confrontation |
| CT-SL | Self-incrimination |
| CT-DP | Due Process |
| CT-WI | Witness immunity |
| | |
| **CU** | **Courts** |
| CU-IP | Inherent powers |
| | |
| **CA** | **Criminal Procedure** |
| CA-IM | Immunity |
| CA-RA | Right Against Self-incrimination |
| CA-RT | Right to Confrontation |
| CA-DU | Due Process |
| | |
| **EV** | **Evidence** |
| EV-WI | Witness Immunity |