This decision was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of non-precedential dispositions. Please also note that this electronic decision may contain computer-generated errors or other deviations from the official paper version filed by the Supreme Court.

# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Filing Date:  July 26, 2018**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                    **NO. S-1-SC-36153**

**JORDAN HURD,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF VALENCIA COUNTY**
**James Lawrence Sanchez, District Judge**

Bennett J. Baur, Chief Public Defender
William A. O'Connell, Assistant Appellate Defender
Santa Fe, NM

for Appellant


Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

**DECISION**

**CLINGMAN, Justice.**

**I.      INTRODUCTION**

**{1}**      A jury found Defendant Jordan Hurd guilty of the willful and deliberate murders of Wesley Hobbs and Amanda Hobbs, both contrary to NMSA 1978, Section 30-2-1(A)(1) (1994), and of aggravated battery with a deadly weapon upon Patricia Hobbs, contrary to NMSA 1978, Section 30-3-5(C) (1969). The jury also found that Defendant used a firearm in the commission of the aggravated battery pursuant to NMSA 1978, Section 31-18-16(A) (1993). The trial court imposed a sentence of life imprisonment for each of the willful and deliberate murders. For the aggravated assault with a deadly weapon, the trial court sentenced Defendant to the basic sentence of three years imprisonment, increased by one year by virtue of the jury's firearm finding, for a sentence of four years. The trial court ordered that the sentences imposed be served consecutive to one another for a total sentence of life imprisonment followed by life imprisonment followed by four years imprisonment.

**{2}**      This matter comes before us upon Defendant's direct appeal from the trial court of his convictions. We exercise jurisdiction under Article VI, Section 2 of the New

2

Mexico Constitution and Rule 12-201(A)(1) NMRA.

{3}     Defendant challenges his convictions on four grounds. First is that the trial court improperly admitted into evidence three gruesome photographs that emphasized the horrific impact of the crime scene on Patricia Hobbs but which had little probative value. Second, Defendant contends that the trial court deprived him of a fair trial when it refused to give a failure-to-call-witness jury instruction. Third, Defendant asserts that cumulative error deprived him of a fair trial. Fourth, Defendant argues that the evidence was insufficient to support a finding that he was the shooter.

{4}     We affirm Defendant's convictions on all counts. Because Defendant raises no questions of law that New Mexico precedent does not already sufficiently address, we exercise our discretion under Rule 12-405(B)(1) NMRA to dispose of this case by nonprecedential decision.

**II.     BACKGROUND**

{5}     Wesley Hobbs lived with his wife Patricia Hobbs, his daughter Amanda Hobbs and his son John Hobbs in Jarales, Valencia County, New Mexico. On September 7, 2013, the family was preparing to go on a camping trip. John had already departed. Wesley was trying to repair a broken radiator on an SUV. Mark Lujan, a friend of the Hobbs family, was around the Hobbs' house that day. Lujan had known Wesley for about six months and considered Wesley a friend. On occasion, Wesley had supplied

Lujan with methamphetamine.

{6} Lujan testified that Wesley sent him to get a replacement radiator. Lujan lived in the garage of a man named George Bond. In the course of his errand, Lujan went to George Bond's house. Defendant was at Bond's house when Lujan arrived.

{7} Lujan stated that Bond had both a radiator and a stolen motorcycle. Bond, Lujan, and Defendant decided that they would try to sell the motorcycle to Wesley and hoped to get some drugs from him. Bond, Lujan, and Defendant smoked a couple of bowls of methamphetamine. They then drove (Lujan rode the stolen motorcycle) to the Hobbs' residence.

{8} Wesley did not want to buy the stolen motorcycle. Wesley then took the three men into his house. Patricia was cleaning the refrigerator when they came in. They went into Wesley's room and smoked together. Lujan testified that when he got sufficiently high, he left Wesley, Bond, and Defendant in the room and went outside.

{9} Patricia testified that she did not know the two men that Lujan brought with him that day. One was wearing a "hoodie," and the other was wearing a jersey and also wore a backpack. When the men went into the bedroom, Patricia stayed in the kitchen. She testified that after five or ten minutes Lujan came out of the bedroom and left the house through the kitchen door. She then heard Wesley say "What? What?" and then heard two or three gunshots.

4

{10}     Patricia testified that after the gunshots the two strangers came out of the bedroom and that the man in the jersey had a gun. At that moment, Amanda appeared and asked, "What's going on?" Patricia testified that the man with the gun shot Amanda two times and that she fell to the floor. She testified that the man with the gun then shot at Patricia as well and that one shot struck her in her neck.

{11}     The man with the gun appeared to have run out of bullets and yelled "There's one still standing." The two men then left the residence.

{12}     Patricia testified that she crawled into the bedroom to see Wesley and that he was unresponsive. She went to Amanda next but found her unresponsive also. She described getting a towel and trying to clean up the blood, but because there was so much blood, she "couldn't take it" and went outside to the porch to phone for help.

{13}     At trial, Patricia identified Defendant as the man wearing a jersey who shot Amanda and who shot her. She testified about previously picking a photograph of Defendant from a photo-lineup and identifying him as the man who shot her and Amanda. She testified she had no doubt that Defendant was the shooter. She testified that she could not even describe the other man wearing the hoodie.

**III.    DISCUSSION**

{14}     We clarify our conclusions on the four issues that Defendant has raised in this

appeal.

## A. Admission of the Photographs Was Not an Abuse of Discretion

{15} Defendant asserts that the trial court admitted three gruesome photographs that emphasized the horrific impact of the crime scene on Patricia but had little probative value. Defendant claims that these photos, admitted over Defendant's objection, were cumulative of other evidence that amply described the crime scene. Defendant also claims that the graphic nature of the photographs inflamed the passions of the jury and that the three photographs were more prejudicial than probative thereby depriving Defendant of a fair trial. Defendant urges this Court to adopt the reasoning of the Utah Supreme Court when it interpreted Utah's Rule of Evidence 403, which is identical to our Rule 11-403 NMRA. In *State v. Dunn*, 850 P.2d 1201 (Utah 1993), the Utah Supreme Court held that "[w]hen applying Rule 403, it is necessary to determine first whether the proffered evidence has an unusual propensity to unfairly prejudice, inflame, or mislead the jury." *Id.* at 1221. If the evidence has an "unusual propensity to unfairly prejudice, inflame or mislead" the Utah Court presumed the prejudice to outweigh the probative value and required the "proponent to show that the evidence has unusual probative value." *Id.* at 1222.

{16} As held in *State v. Arredondo-Soto*, S-1-SC-35112, dec. ¶ 22 (N.M. Sup. Ct. June 2, 2016) (nonprecedential), this Court concludes that *Dunn* is inapplicable. Here

6

the trial judge had considerable discretion in determining the admissibility of evidence under New Mexico's Rule 11-403. *Arredondo-Soto*, S-1-SC-35112, dec. ¶ 22. The plain language of Rule 11-403 correctly sets forth the test for the admissibility of the three photographs. "A court may exclude relevant evidence if its probative value is *substantially* outweighed by a danger of . . . *unfair* prejudice . . . or needlessly presenting cumulative evidence." *Id.* (emphasis added).

{17}     Here the prosecutor argued that a photograph of Amanda Hobbs was relevant because it showed her body in relation to the living room couch on which two spent cartridge casings were found indicating the proximity of the shooter to the victim. In admitting the photograph, the trial court found that the photograph was relevant and that its "probative value outweighed any potential for unfair prejudice" under Rule 11-403. The prosecutor also argued that the two other contested photographs showed Wesley Hobbs essentially trapped in the back of a very small room. The trial court found the photographs were relevant to show the position of the body and the way the room looked. The trial court then admitted the two photographs as relevant, finding that their "probative value outweighs" unfair prejudice.

{18}     A trial court's rulings on the admission of evidence are reviewed for abuse of discretion. *State v. Flores*, 2010-NMSC-002, ¶ 25, 147 N.M. 542, 226 P.3d 641. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the

facts and circumstances of the case. We cannot say the trial court abused its discretion by its ruling unless we can characterize it[s ruling] as clearly untenable or not justified by reason." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted). Here the trial court properly applied Rule 11-403. The trial court found the photographs to be relevant and then balanced their probative value against the danger of unfair prejudice. In finding no danger of unfair prejudice substantially outweighing their probative value, the trial court properly admitted the photographs as evidence. The trial court did not abuse its discretion.

**B.    A Failure-to-Call-Witness Instruction Is Inappropriate in This Case**

{19}    Defendant argues that the State failed to call witnesses to testify regarding DNA and fingerprint analyses that were conducted at the crime scene. Defendant asserts that the trial court deprived him of a fair trial when it refused to give a failure-to-call-witness instruction to the jury. Defendant tendered to the trial court UJI 14-5014 NMRA to be included with the final instructions to be given to the jury. The State objected and the trial court rejected the tendered instruction.

{20}    UJI 14-5014 states,

>       If a witness whose testimony would have been material on an issue in the case was peculiarly available to the state and was not introduced by the state and the absence of that witness has not been

8

sufficiently accounted for or explained, then you may, if you deem it appropriate, infer that the testimony by that witness would have been unfavorable to the state and favorable to the accused.

{21} The UJI 14-5014 use note states, "No instruction on this subject shall be given."

{22} The committee commentary to UJI 14-5014 further states that "[n]o instruction on this subject is necessary to guide the jury, and such an instruction may constitute a comment on the evidence" (citing Rule 11-107 NMRA). "The legitimate function of jury instructions is not to further the art of advocacy. Their function is to shed light and eliminate confusion." *State v. Robinson*, 1980-NMSC-049, ¶ 27, 94 N.M. 693, 616 P.2d 406. In this case, the jury was instructed that Defendant was presumed "to be innocent unless and until [the jury was] satisfied beyond a reasonable doubt of his guilt" and that "the burden is always on the state to prove guilt beyond a reasonable doubt." To give Defendant's tendered instruction "would only have caused the court to comment upon the weight of the evidence," placing "undue emphasis and importance on [testimony not introduced by the State] instead of leaving it to the jury to assess [Defendant's guilt] according to all the evidence" the State presented at trial. *Robinson*, 1980-NMSC-049, ¶¶ 29, 31 (internal quotation marks and citations omitted). Plainly speaking, this instruction is never justified. The trial court properly refused to give the failure-to-call-witness instruction to the jury.

**C.      Cumulative Error Did Not Deprive Defendant of a Fair Trial**

9

{23} Defendant points to perceived trial errors raised in the previous two issues which when taken individually would not warrant the granting of a new trial but when taken together would be so prejudicial to Defendant as to require a new trial. The doctrine of cumulative error is to be strictly applied and cannot be invoked "when the record as a whole demonstrates that Defendant received a fair trial." *State v. Trujillo*, 2002-NMSC-005, ¶ 63, 131 N.M. 719, 42 P.3d 814 (internal quotation marks and citation omitted). Each of Defendant's claimed errors in the two issues discussed previously fails to establish meritorious grounds for finding error. *See State v. Saiz*, 2008-NMSC-048, ¶ 66, 144 N.M. 663, 191 P.3d 521 ("[W]here there is no error to accumulate, there can be no cumulative error."), *abrogated on other grounds*, *State v. Belanger*, 2009-NMSC-025, ¶ 36 & n.1, 146 N.M. 357, 210 P.3d 783. Defendant has raised no additional legal issues to support his claim of cumulative error. Defendant's claim is without merit.

**D.      The Evidence Is Sufficient to Support Defendant's Convictions**

{24} Defendant argues that the evidence is insufficient to establish him as the shooter in his convictions of two counts of first-degree murder and one count of aggravated battery. In reviewing for sufficiency of the evidence that supported a conviction, this Court must determine "whether any rational finder of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Holt*, 2016-

10

NMSC-011, ¶ 20, 368 P.3d 409 (internal quotation marks and citation omitted). We review the sufficiency of the evidence "from a highly deferential standpoint," *State v. Dowling*, 2011-NMSC-016, ¶ 20, 150 N.M. 110, 257 P.3d 930, considering the evidence adduced at trial "in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict," *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176.

{25}    The jury heard the testimony of Mark Lujan who placed himself, Defendant, George Bond, and Wesley Hobbs in the bedroom of the Hobbs' residence. Lujan testified that he left before any shots were fired. Patricia Hobbs corroborates this by testifying that she saw Lujan, an unknown man wearing a hoodie, and an unknown man wearing a jersey, whom she identified as Defendant, go into the bedroom at the Hobbs' residence. Patricia then testified that she saw Lujan exit the bedroom and residence leaving the two unknown men and Wesley in the bedroom.

{26}    Patricia further testified that a short while later she heard two or three gunshots from the bedroom and then saw the two unknown men emerge from the room. The man in the jersey whom she identified as Defendant had a gun. She saw the man in the jersey, Defendant, shoot Amanda Hobbs. The man in the jersey, Defendant, was also shooting at Patricia and struck her once, stopping only when his gun was empty.

{27}    In court and before the jury, Patricia Hobbs identified Defendant as the man in

the jersey who was in the bedroom when Wesley was shot, who emerged from the bedroom with a gun, who shot and killed Amanda, and who shot and wounded her. She testified that she had no doubt that Defendant was the shooter.

{28}     Six cartridge casings were recovered from the scene. Three were found in the bedroom where Wesley was shot three times in the head. Two casings were found in the living room where Amanda was shot two times in the head. One casing was found in the kitchen area where Patricia was shot in the neck. Steve Guerra, a firearm and tool-mark expert, testified that the casing found in the kitchen was fired from a .40 caliber Glock pistol. The pistol that fired this cartridge was recovered six weeks after the shooting at the residence of Lujan's sister while the police pursued Bond, her then-boyfriend. Guerra testified that the three casings found in the bedroom and the two casings found in the living room were fired from the same pistol but not from a Glock pistol. That unknown pistol was not recovered.

{29}     Defendant argues that Lujan's testimony is unreliable because Lujan did not like Defendant and was afraid of Bond. Defendant argues that Patricia's testimony is not credible because she only saw Defendant a short while, because she herself was traumatized and shot, and because she cannot fully describe or identify the other man wearing the hoodie. The jury heard these arguments and found them to be without merit. We will not examine issues of credibility; that is for the jury alone to decide.

12

*See* UJI 14-5020 NMRA. "This Court has consistently held that the jury [is] the judge[] of the weight and credibility of evidence." *State v. Alberico*, 1993-NMSC-047, ¶ 33, 116 N.M. 156, 861 P.2d 192 (internal quotation marks and citation omitted).

{30}    We hold that a reasonable juror, based upon the evidence produced in court, could have found Defendant guilty beyond a reasonable doubt of the murder of Wesley Hobbs, the murder of Amanda Hobbs and the aggravated battery with a firearm upon Patricia Hobbs.

## IV.    CONCLUSION

{31}    We affirm the judgment of the trial court.

{32}    **IT IS SO ORDERED.**

_____
**GARY L. CLINGMAN, Justice**

**WE CONCUR:**

_____
**JUDITH K. NAKAMURA, Chief Justice**

_____
**PETRA JIMENEZ MAES, Justice**

13

_____
**CHARLES W. DANIELS, Justice**


_____
**BARBARA J. VIGIL, Justice**